**Tony SEATON, Plaintiff/Appellant,**

v.

**Carl JOHNSON, in his capacity as Commissioner of the Department of Transportation of the State of Tennessee, Defendant/Appellee.**

Court of Appeals of Tennessee, Middle Section, at Nashville.

Jan. 27, 1995.

Application for Permission to Appeal Denied by Supreme Court May 1, 1995.

Tony Seaton, Johnson City, plaintiff-appellant pro se.

Charles W. Burson, Atty. Gen. and Reporter and Rachel L. Steele Asst. Atty. Gen., Nashville, for defendant/appellee.

*OPINION*

TODD, Presiding Judge.

This is an action under T.C.A. Section 10–7–503 to obtain access to public records. From a judgment denying access, the plain-

tiff has appealed stating a single issue as follows:

The Trial Court erred in refusing to allow inspection of certain documents held by the Tennessee Department of Transportation in violation of the Tennessee Public Records Act.

The defendant presents the issues as follows:

I. Is the information concerning railroad-highway grade crossings, which is sought by the plaintiff from the Tennessee Department of Transportation (TDOT), within the scope of 23 U.S.C. § 409?

II. Should this Court affirm the Chancellor's decision that federal law preempts the Tennessee Public Records Act and thereby bars public disclosure of the TDOT data sought by the plaintiff?

III. May the Chancellor's judgment be affirmed by this Court on the additional or alternative grounds that this TDOT data is a confidential public record and privileged under Tennessee law?

T.C.A. Section 10–7–503 provides in pertinent part as follows:

**Records open to public inspection—Exceptions.**—(a) All state, county and municipal records and all records maintained by the Tennessee performing arts center management corporation, except any public documents authorized to be destroyed by the county public records commission in accordance with Section 10–7–404, shall at all times, during business hours, be open for personal inspection by any citizen of Tennessee, and those in charge of such records shall not refuse such right of inspection to any citizen, unless otherwise provided by state law.

On March 2, 1993, plaintiff wrote the following letter:

Tennessee Department of Transportation

Suite 900

James K. Polk Building

Nashville, Tennessee 37243

RE: Railroad Crossing at Sand Valley Road
Washington County, Jonesborough, Tennessee

D/O/A: November 4, 1992

To whom It May Concern:

I am representing the parents of Julie Ann and Michael Miller who were both killed as a result of a car/train collision on November 4, 1992 on Sand Valley Road in Jonesborough, Tennessee. To complete my investigation I need the following information with reference to the list of crossings I have attached to this letter:

1. The average daily traffic (ADT). (Please state how you arrived at this figure, if you did an actual traffic count please tell me when this was done.)

2. The average daily freight train volume.

3. The average daily passenger train volume.

4. The maximum timetable speed.

5. The accident history.

6. For each of the crossings on the enclosed list that do not have a national inventory number posted, please update me as to the correct number.

7. For each of the enclosed list of crossings that have traffic control devices please tell me (a) when the active traffic control device was installed and (b) who paid for the installation.

Your assistance in this matter is very much appreciated and please send me a bill for providing this information.

Very truly yours,
Tony Seaton

It is observed that plaintiff's letter was not an assertion of the rights guaranteed by Section 10–7–503, but a request that the defendant search its records for a shopping list of information to be furnished to plaintiff.

On August 26, 1993, the Attorney General responded in pertinent part as follows:

I am responding to your request for information from the Tennessee Department of Transportation (TDOT) concerning the railroad crossing at Sand Valley Road in Jonesborough, Washington Coun-

ty, Tennessee and other railroad highway crossings in Washington County. In your letter to TDOT dated March 2, 1993, you indicated that you wanted the information in connection with a tort action in which you were representing Julie Ann and Michael Miller.

The information you are requesting is contained in surveys, lists, and data compiled by TDOT in connection with Tennessee's Railroad Grade Crossing Safety Program, a federally funded program which was created in 1973 by the Federal Railroad Safety Act. These surveys, lists, and data are compiled for the purpose of identifying, evaluating, or planning the safety enhancement of railroad-highway crossings pursuant to Title 23, United States Code, Section 130.

Title 23, Section 409 of the United States Code provides that "notwithstanding any other provision of law," these reports, surveys, schedules, lists, and data "shall not be subject to discovery or admitted into evidence in a Federal or State court proceeding or considered for other purposes in any action for damages arising from any occurrence at a location mentioned or addressed in such reports, surveys, schedules, lists, or data." Federal law not only makes this information non-discoverable and inadmissible among parties to litigation. By operation of 5 U.S.C. § 552(b)(3) and (b)(5) this information must be deemed to be confidential under federal law, and withheld from public disclosure. It is federal law that requires Tennessee and the other states to assemble and maintain this information. Consequently, the rule of federal preemption would require that this information be kept confidential in state hands, regardless of any contrary provisions of Tennessee's Public Records Act.

On January 6, 1994, plaintiff filed a complaint entitled "Complaint for Disclosure of Public Records," and stating:

...3. On the 2nd day of March, 1993, the plaintiff requested the defendant to produce public records kept in the normal course of activity at the offices of the Tennessee Department of Transportation at its offices located 700 James K. Polk Building, Nashville, Tennessee....

. . . .

5. Following plaintiff's demands a letter dated August 26, 1993 was sent by the District Attorney General's office of the State of Tennessee denying access to all information requested. A copy of said letter is attached hereto as Exhibit "3".

6. The defendant still refuses to produce the information in spite of continued requests by the plaintiff.

. . . .

8. Plaintiff furthermore brings this action pursuant to Tennessee Code Annotated Section 10–7–505 which in pertinent part provides:

**10–7–505. Denial of access—Procedures for obtaining access—Court orders—Injunctions—Appeals—Liability for nondisclosure.**

(a) Any citizen of Tennessee who shall request the right of personal inspection of any state, county or municipal record as provided in Section 10–7–503, and whose request has been in whole or in part denied by the official and/or designee of the official or through any act or regulation of any official or designee of any official shall be entitled to petition for access to any such record and to obtain judicial review of the actions taken to deny the access.

It is observed that the complaint incorrectly states that plaintiff requested the production of records. His letter of March 2, 1993, indicates otherwise. It is also observed that T.C.A. Section 10–7–505, relied upon for right to sue is conditioned upon a "request (for) right of personal inspection" which does not appear to have occurred.

The complaint further states:

10. Alternatively, plaintiff would show to the court that in the event the defendant relies upon 23 U.S.C. Section 409, plaintiff would aver that said provision is very restrictive in its application and would not preclude the furnishing of the information demanded. 23 U.S.C. Section 409 provides:

Notwithstanding any other provision of law, reports, surveys, schedules, lists, or data compiled for the purpose of identifying, evaluating, or planning the safety enhancement of potential accident sites, hazardous roadway conditions, or railway-highway crossings, pursuant to sections 130, 144 and 152 of this title or for purpose of developing any highway safety construction improvement project which may be implemented utilizing Federal-aid highway funds shall not be admitted into evidence in Federal or State court or considered for other purposes in any action for damages arising from any occurrence at a location mentioned or addressed in such reports, surveys, schedules, lists, or data.

11. Plaintiff would show that none of the information contained in Section 409 has been requested. It is the burden of the defendant to show that any data collected or requested is compiled "for the purpose of identifying, evaluating, or planning the safety enhancement of potential accident sites, hazardous roadway conditions, or railway-highway crossings, pursuant to sections 130, 144 and 152 of this title or for purpose of developing any highway safety construction improvement project which may be implemented utilizing Federal-aid highway funds." *Plaintiff requests such information such as average daily traffic counts, average daily freight train volumes, average daily passenger train volumes, maximum timetable speeds, accident histories, and installation histories of traffic control devices. ...*

12. Plaintiff would alternatively show that 23 U.S.C. Section 409 is violative of the Tenth Amendment to the United States Constitution which provides:

AMENDMENT X Rights reserved to states or people

The powers not delegated to the United States by the Constitution, nor prohibited by it to the states, are reserved to the states respectively, or to the people.

The only substantive prayer of the complaint is:

2. That this Court issue an order requiring the defendant or respondent party or parties to immediately appear and show cause, if any they have, why the petition should not be granted.

The prayer obviously refers to the emphasized portion of the complaint quoted above which states: "Plaintiff requests such information as ..."

It thus appears that the relief sought by the complaint was not the opportunity to personally examine specified records, but a detailed search by state employees and the furnishing of a shopping list of details derived therefrom.

Plaintiff's complaint, quoted above, quotes Title 23, Section 409 in its former text before the 1991 amendment which added the words "shall not be subject to discovery." The present law excludes both discovery *and* introduction as evidence.

The record discloses that, prior to March 2, 1993, the defendant had followed the practice of honoring similar requests, so that plaintiff is not to be criticized for making the request. However, when challenged, the request and complaint must be evaluated in the light of existing law and not of existing practice.

At the bar of this Court, counsel agreed that the subject records are stored in computers which makes personal examination impractical. Without full familiarity with computer technology, this Court cannot speak with authority, but it appears that if a judge can locate an opinion by computer and view it on a computer screen, a similar procedure should be available to a citizen who desires to personally view a record stored in a computer.

It is earnestly hoped that the Legislature will "bring Section 10-7-503 into the computer age" by appropriate alteration to specify the right of access to public computer records.

It appears that, heretofore, the defendant has followed the generous practice of doing research for lawyers which is not required by T.C.A. Section 10-7-503, but that said practice has been discontinued because of the enactment of 23 U.S.C. Section 409, which provides:

**Notwithstanding any other provision of law,** reports, surveys, schedules, lists, or data compiled for the purpose of identifying evaluation, or planning the safety enhancement of potential accident sites, hazardous roadway conditions, or railway highway crossings, pursuant to sections 130, 144 and 152 of this title or for the purpose of developing any highway safety construction improvement projects which may be implemented utilizing Federal-aid highway funds shall not be subject to discovery or admitted into evidence in a Federal or State court proceeding or considered for other purposes in any action for damages arising from any occurrence at a location mentioned or addressed in such reports, surveys, schedules, lists or data.

Although the procedural situation stated above would justify affirmance on that ground, it is deemed appropriate to discuss the issue presented by the parties, which is, "Does 23 U.S.C. Section 409 effectively supersede the Tennessee Public Records Act in respect to the records to which plaintiff desires access." In so doing, the Court is hindered by the fact that both parties refer to the "release of information" rather than "the production of records for examination."

As evidence of this difficulty, plaintiff argues:

... Information that is not in the form of a report, survey, schedule, list or data or is not compiled for the purposes of the statute is not protected by the statute and is discoverable and admissible.

. . . .

The plain language of the statute indicates that only those reports, surveys, schedules, lists, or data "compiled" "pursuant to sections 130, 144, and 152" of 23 U.S.C. or "compiled" for implementing projects "utilizing Federal–Aid highway funds" and which specifically involve the location in the litigation are not discoverable or admissible into evidence. Anything else is potentially discoverable and admissible.

. . . .

It is incorrect to argue that any information dealing with railroad grade crossings is covered by 23 U.S.C. Sec. 409 and is

privileged. That is not the case. Only documents created for the statutory purpose are protected....

. . . .

The Tennessee Department of Transportation maintains routine files and records containing the average daily traffic count and maximum speed of vehicles and trains at the crossing, existing warning devices, and accident reports on crossings. This information is specific evidence normally used in crossing cases by traffic engineers in determining whether a crossing is adequately protected and the types of warning devices needed. This information is also specific evidence necessary for traffic engineers to use to form their opinions regarding the need for warning devices. This evidence is also necessary for a jury to know in order to determine whether a crossing was extra hazardous and required crossing warning devices. The evidence normally used to prove liability is the same kind of information used by the Tennessee Department of Transportation in deciding whether a crossing needs safety installations and is the same kind of information enumerated in the TDOT's orders and opinions.

The difficulties presented by the foregoing argument are twofold. First, plaintiff does not point out specific records of the defendant which are unconnected with the federal programs referred to in 23 U.S.C. Section 409. Plaintiff insists that defendant has the burden of showing its records are confidential. If this be true, plaintiff has designated no record for defendant to prove confidential.

The second difficulty is that plaintiff argues that the information he desires is the same as that which the State is required to report to the federal agency. It would be an anomaly for this Court to deny access to the State's copy of its report to the federal government only to require the State to compile from its records a report to plaintiff identical with that furnished to the federal government.

The uncontradicted affidavit of the State's witness indicates that all of the "requested information" was collected and preserved for the sole and express purpose of complying

with the federal statute of which 23 U.S.C. Section 409 is a part.

In *Southern Pacific Transportation Company v. Yarnell,* App.Div. 1, 1993, 176 Ariz. 552, 863 P.2d 271, the Arizona Appellate Court reversed a trial court holding that simple factual information gathered for or contained in reports to the federal government are not excluded from the confidential requirements of 42 U.S.C. Section 409, and said:

> The clear weight of authority holds that data as well as documents are protected by the statute.

863 P.2d at 274–75.

Authority cited by plaintiff appears to be the only exception to the "weight of authority" cited in *Southern Pacific.*

This Court chooses to follow "the clear weight of authority" cited above and to adopt the holding of *Southern Pacific.* This does not mean that all records of the defendant regarding railroad crossings are immune to examination by the public; but it does mean that all records used or usable in identifying, evaluating or planning safety of highways or railway-highway crossings pursuant to Sections 130, 144 and 152 of 23 U.S.C. are so immune to examination.

If the foregoing is deemed to be unjust, the remedy lies with Congress, for:

> This Constitution, and the laws of the United States which may be made in pursuance thereof, ... shall be the supreme law of the land, and the judges in every state shall be bound thereby, any thing in the Constitution or law of any state to the contrary notwithstanding.

*Constitution of the United States,* Art. 6, Sec. 2.

The judgment of the Trial Court is affirmed. Costs of this appeal are taxed to the plaintiff and his surety. The cause is remanded to the Trial Court for any necessary further proceedings.

Affirmed and Remanded.

LEWIS and CANTRELL, JJ., concur.