Gretchen SWIFT

v.

John CAMPBELL et al.

Court of Appeals of Tennessee,
at Nashville.

July 9, 2004 Session.

Aug. 25, 2004.

Permission to Appeal Denied by
Supreme Court Jan. 31, 2005.

Michael J. Passino, Nashville, Tennessee, for the appellant, Gretchen Swift.

Paul G. Summers, Attorney General and Reporter, and Richard H. Dunavant, Assistant Attorney General, for the appellees, John Campbell and William Gibbons.

## OPINION

WILLIAM C. KOCH, JR., P.J., M.S., delivered the opinion of the court, in which WILLIAM B. CAIN and FRANK G. CLEMENT, JR., JJ., joined.

This appeal involves the right to inspect and copy the contents of an assistant district attorney general's files in a case involving a prisoner on death row. An assistant district attorney general for the Thirtieth Judicial District denied the request of an attorney employed by the Office of the Federal Public Defender to inspect and copy the records he created while preparing for a concluded state proceeding being challenged in federal court. Thereafter, the requesting attorney filed suit in the Chancery Court for Davidson County pursuant to Tenn.Code Ann. § 10–7–505 (1999) asserting her right under Tenn.Code Ann. § 10–7–503 (Supp.2003) to inspect and copy the assistant district attorney's records. Following a hearing, the trial court dismissed the petition based on Tenn. R.Crim. P. 16, the work product doctrine, the law enforcement investigative privilege, and the deliberative process privilege. The requesting attorney has appealed. We have determined that Tenn. R.Crim. P. 16 protects the requested records from disclosure because a federal proceeding challenging the state proceeding for which the records were prepared is currently pending.

## I.

On August 5, 1981, Philip Workman shot and killed a Memphis police lieutenant during a botched robbery at a Wendy's Restaurant in Memphis, Tennessee. In 1982, a jury in Memphis convicted Mr. Workman of first degree murder and sentenced him to death. The Tennessee Supreme Court later affirmed both his conviction and his sentence, and the United States Supreme Court declined to review the case.[1] Mr. Workman later filed two unsuccessful petitions for post-conviction relief in state court,[2] an unsuccessful habe-

1. *State v. Workman*, 667 S.W.2d 44 (Tenn.), *cert. denied*, 469 U.S. 873, 105 S.Ct. 226, 83 L.Ed.2d 155 (1984).

2. *Workman v. State*, C.C.A. No. 111, 1987 WL 6724 (Tenn.Crim.App. Feb. 18, 1987), *perm.*

*app. denied* (Tenn. May 11, 1987), *cert. denied*, 484 U.S. 873, 108 S.Ct. 209, 98 L.Ed.2d 160 (Oct. 5, 1987); *Workman v. State*, 868 S.W.2d 705 (Tenn.Crim.App. Apr. 7, 1993), *perm. app. denied* (Tenn. Nov. 29, 1993), *cert denied*, 510

as corpus petition in federal court,[3] and an unsuccessful petition to file a second habeas corpus action in federal court.[4]

Thereafter, Mr. Workman filed a petition for a statutory writ of error coram nobis[5] in the Criminal Court for Shelby County asserting that newly discovered evidence which was unavailable at his 1982 trial demonstrated that he did not shoot the police lieutenant.[6] The State of Tennessee was represented by Assistant District Attorney General John Campbell in these proceedings. The criminal court dismissed the petition because it was not timely filed, and the Tennessee Court of Criminal Appeals affirmed. However, the Tennessee Supreme Court reversed the order and remanded the case for a hearing on the petition. *Workman v. State*, 41 S.W.3d 100 (Tenn.2001). The criminal court thereafter held a hearing and determined that neither the recantation testimony nor the newly discovered X-ray warranted coram nobis relief. The court's decision was affirmed by the Tennessee Court of Criminal Appeals in 2002, and in 2003, the Tennessee Supreme Court denied Mr. Workman's application for permission to appeal. *State v. Workman*, 111 S.W.3d 10 (Tenn.Crim.App. Dec. 30, 2002), *perm. app. denied* (Tenn. May 19, 2003).

On September 3, 2003, Mr. Workman filed a petition for writ of habeas corpus in the United States District Court for the Western District of Tennessee collaterally attacking the recently concluded state court writ of error coram nobis proceeding. Five days later, on September 8, 2003, Gretchen Swift, an attorney employed by the Office of the Federal Public Defender in Nashville, presented a written request under Tenn.Code Ann. § 10–7–503 to General Campbell requesting the opportunity to inspect and copy all of the documents in possession of the District Attorney General for the Thirtieth Judicial District that had been prepared in the State's defense of Mr. Workman's petition for a writ of error coram nobis. General Campbell denied Ms. Swift's request in a letter dated September 10, 2003, on the ground that the file was not "closed" in light of the pending federal proceedings.

On September 11, 2003, Ms. Swift filed a petition pursuant to Tenn.Code Ann. § 10–7–505 seeking a court order permitting her to inspect and copy all records in the custody of the Office of the District Attorney for the Thirtieth Judicial District "related to Philip Workman's *error coram nobis* proceeding." In response, the Attorney General and Reporter moved to dismiss Ms. Swift's petition on four grounds: the work product doctrine, the

---

U.S. 1171, 114 S.Ct. 1207, 127 L.Ed.2d 555 (Feb. 28, 1994).

3. *Workman v. Bell*, 178 F.3d 759 (6th Cir. 1998), *cert. denied*, 528 U.S. 913, 120 S.Ct. 264, 145 L.Ed.2d 221 (1999).

4. *Workman v. Bell*, 227 F.3d 331 (6th Cir. 2000), *(en banc)*, *cert. denied*, 531 U.S. 1193, 121 S.Ct. 1194, 149 L.Ed.2d 109 (2001).

5. A writ of error coram nobis pursuant to Tenn.Code Ann. § 40–26–105 (2003) is an extraordinary remedy available to convicted defendants in criminal cases. It provides a vehicle for obtaining a new trial based on newly discovered evidence relating to matters litigated at trial that would have, with reason-

able probability, resulted in a different judgment had it been presented to the convicting jury. To be entitled to the writ, the convicted defendant must demonstrate that he or she was without fault in failing to present the evidence at the proper time. *Harris v. State*, 102 S.W.3d 587, 592–93 (Tenn.2003); *State v. Workman*, 111 S.W.3d 10, 19 (Tenn.Crim.App. 2002).

6. The evidence prompting Mr. Workman's petition involved the recantation of the testimony of a key prosecution witness and a newly discovered post-mortem X-ray of the slain police officer.

"law enforcement investigative privilege," the "deliberative process privilege," and Tenn. R.Crim. P. 16(a)(2). Attached to this motion was General Campbell's affidavit stating that the material sought by Ms. Swift included personal notes and observations made by attorneys in preparation for and during court proceedings, as well as memoranda prepared by members of the district attorney general's office in connection with the investigation or prosecution of Mr. Workman's case. Following a hearing on September 24, 2003, the trial court entered an order on October 9, 2003, dismissing Ms. Swift's petition for all the reasons contained in the Attorney General and Reporter's motion. Ms. Swift has appealed from this decision.

## II.

### STANDARD OF REVIEW

There are no genuine material factual disputes in this case. Its outcome hinges on the proper interpretation of Tennessee's public records statutes and their application to the facts of this case. Issues involving the construction of statutes and their application to facts involve questions of law. *Memphis Publ'g Co. v. Cherokee Children & Family Servs., Inc.,* 87 S.W.3d 67, 74 (Tenn.2002); *Waller v. Bryan,* 16 S.W.3d 770, 773 (Tenn.Ct.App.1999). Therefore, the trial court's resolution of these issues is not entitled to Tenn. R.App. P. 13(d)'s presumption of correctness on appeal. We will review the issues de novo and reach our own independent conclusions regarding them. *King v. Pope,* 91 S.W.3d 314, 318 (Tenn.2002).

## III.

### TENNESSEE'S PUBLIC RECORDS STATUTES

▮ Tennessee's courts have long recognized the public's right to examine governmental records. Over one hundred years ago, the Tennessee Supreme Court held that Memphis residents concerned about the city's financial condition had the right to inspect the city's records. *State ex rel. Wellford v. Williams,* 110 Tenn. 549, 593, 75 S.W. 948, 958 (1903). In 1957, the Tennessee General Assembly codified the public access doctrine when it enacted Tennessee's first public records statutes.[7] *Ballard v. Herzke,* 924 S.W.2d 652, 661 (Tenn.1996). The purpose of these statutes, mirroring the rationale of *State ex rel. Wellford v. Williams,* is to promote public awareness of the government's actions and to ensure the accountability of government officials and agencies by facilitating the public's access to governmental records. *Memphis Publ'g Co. v. Cherokee Children & Family Servs., Inc.,* 87 S.W.3d at 74; *Memphis Publ'g Co. v. City of Memphis,* 871 S.W.2d 681, 687–88 (Tenn. 1994).

▮ The public records statutes amount to a "clear mandate in favor of disclosure." *Tennessean v. Electric Power Bd.,* 979 S.W.2d 297, 305 (Tenn.1998). They create a presumption that records described in Tenn.Code Ann. § 10–7–301(6) (Supp.2003) and Tenn.Code Ann. § 10–7–503 are to be open to the public. *State v. Cawood,* 134 S.W.3d 159, 165 (Tenn.2004); *Arnold v. City of Chattanooga,* 19 S.W.3d 779, 785 (Tenn.Ct.App.1999). Accordingly, when access to governmental records is sought, the government must make the records available unless it can justify not disclosing the records by a preponderance of the evidence. Tenn.Code Ann. § 10–7–505(c).

▮ The scope and application of the public records statutes are purposefully

---

7. Act of Mar. 18, 1957, ch. 285, 1957 Tenn. Pub. Acts 932 (codified as amended at Tenn. Code Ann. §§ 10–7–503 to –506 (1999 & Supp.2003)).

broad. They are an "all encompassing legislative attempt to cover all printed matter created or received by government in its official capacity." *Griffin v. City of Knoxville*, 821 S.W.2d 921, 923 (Tenn.1991) (*quoting Board of Educ. of Memphis City Schools v. Memphis Publ'g Co.*, 585 S.W.2d 629, 630 (Tenn.Ct.App.1979)). Accordingly, the General Assembly has directed the courts to construe the public records statutes broadly "so as to give the fullest possible public access to public records." Tenn.Code Ann. § 10–7–505(d).

Notwithstanding the breadth of the public records statutes' disclosure requirements, the General Assembly recognized from the outset that circumstances could arise where the reasons not to disclose a particular record or class of records would outweigh the policy favoring public disclosure. Accordingly, the General Assembly provided two types of exceptions from disclosure under the public records statutes. First, the General Assembly included specific exceptions from disclosure in the public records statutes themselves. Second, it acknowledged and validated both explicit and implicit exceptions from disclosure found elsewhere in state law.

As originally enacted, the public records statutes excepted only two classes of records from disclosure. These records included the medical records of patients in state hospitals and military records involving the security of the United States or the State of Tennessee. Act of Mar. 18, 1957, ch. 285, § 2, 1957 Tenn. Pub. Acts 932, 932 (codified as amended at Tenn.Code Ann.

§ 10–7–504(a)(1), (3)). During the intervening fifty years, the number of specific exceptions from disclosure in Tenn.Code Ann. § 10–7–504 has increased from two to twenty. The General Assembly has also included additional exceptions in Tenn. Code Ann. § 10–7–503(d)–(e).

Similarly, the public records statutes as originally enacted excepted from disclosure government documents whose confidentiality was "provided by law or regulations made pursuant thereto."[8] In 1984, the General Assembly narrowed this exception to apply only to records made confidential by "state statute."[9] As a result of this amendment, the only exceptions from disclosure under the public records statutes were statutory, and the courts' role when considering disputes over the access to public records was to parse through the Tennessee Code to determine whether it contained an express exception applicable to the records at issue.

The narrowing of this exception did not last long. Seven years later, the General Assembly again amended Tenn.Code Ann. § 10–7–503(a) by replacing the phrase "state statute" with "state law."[10] The change is significant for two reasons. First, it signaled a return to the General Assembly's original understanding that statutes were not the sole source of exceptions from the public records statutes' disclosure requirements. Second, it broadened the permissible sources of exceptions from disclosure to include not only statutes,[11] but also the Constitution of Tennessee, the common law, the rules of court,

---

8. Act of Mar. 18, 1957, ch. 285, § 1, 1957 Tenn. Pub. Acts 932, 932.

9. Act of May 17, 1984, ch. 929, § 1, 1984 Tenn. Pub. Acts 890, 890.

10. Act of May 6, 1991, ch. 369, § 7, 1991 Tenn. Pub. Acts 598, 598 (codified as amended at Tenn.Code Ann. § 10–7–503(a)).

11. The cross references to Tenn.Code Ann. § 10–7–504 currently list approximately 136 statutes containing exceptions to public records act disclosure.

and administrative rules and regulations because each of these has the force and effect of law in Tennessee. *Tennessee Small Sch. Sys. v. McWherter,* 851 S.W.2d 139, 148 (Tenn.1993) (Constitution of Tennessee); *Frye v. Blue Ridge Neuroscience Ctr., P.C.,* 70 S.W.3d 710, 713 (Tenn.2002) (rules of court); *Emery v. Southern Ry.,* 866 S.W.2d 557, 561 (Tenn.Ct.App.1993) (the common law); *Kogan v. Tennessee Bd. of Dentistry,* No. M2003–00291–COA–R3–CV, 2003 WL 23093863, at *5–6 (Tenn. Ct.App. Dec. 30, 2003) (No Tenn. R.App. P. 11 application filed) (administrative rules and regulations).

▇ Accordingly, Tenn.Code Ann. § 10–7–503(a) now provides that "all state, county and municipal records ... shall at all times, during business hours, be open for personal inspection by any citizen of Tennessee, and those in charge of such records shall not refuse such right of inspection to any citizen, unless otherwise provided by state law." When called upon to interpret and apply this statute, our role is to determine whether state law either explicitly or implicitly excepts particular records or a class of records from disclosure under the public records statutes. We must, however, be guided by the clear legislative policy favoring disclosure. Thus, unless it is clear that disclosure of a record or class of records is excepted from disclosure, we must require disclosure even in the face of "serious countervailing considerations." *Memphis Publ'g Co. v. City of Memphis,* 871 S.W.2d at 684.

## IV.

### TENN. R. CRIM. P. 16 AND THE WORK PRODUCT DOCTRINE

▇ Subject to several narrow exceptions not applicable here, records in the hands of private parties are beyond the reach of the public records statutes.[12] Thus, the public records statutes cannot be used as a discovery device in litigation between private parties. Over the past thirty years, however, the public records statutes have been used with increasing frequency as a discovery tool in cases in which the government or a governmental entity is a party. Parties litigating or contemplating litigation with the government see the public records statutes as a vehicle to obtain more discovery than the otherwise applicable rules of discovery permit. Nowhere is this more evident than in the cases construing Tenn. R.Crim. P. 16(a)(2) which embodies the work product doctrine as it applies to criminal cases.

▇ The central purpose of the work product doctrine is to protect an attorney's preparation for trial under the adversary system. The policy underlying the doctrine is that lawyers preparing for litigation should be permitted to assemble information, to separate the relevant facts from the irrelevant, and to use the relevant facts to plan and prepare their strategy without undue and needless interference. *Boyd v. Comdata Network, Inc.,* 88 S.W.3d 203, 219–20 (Tenn.Ct.App.2002). Thus, the doctrine protects parties from "learning of the adversary's mental impressions, conclusions, and legal theories of the case," *Memphis Publ'g Co. v. City of Memphis,* 871 S.W.2d at 689, and prevents a litigant "from taking a free ride on the research and thinking of his opponent's lawyer." *United States v. Frederick,* 182 F.3d 496, 500 (7th Cir.1999).

▇ While the work product doctrine is most frequently invoked in civil

12. *Creative Rests., Inc. v. City of Memphis,* 795 S.W.2d 672, 678–79 (Tenn.Ct.App.1990) (holding that leases between private renters of city-owned property were public records even though they were in the hands of one of the private party's attorneys).

cases, it has a vital role in assuring the proper functioning of the criminal justice system. *United States v. Nobles*, 422 U.S. 225, 238, 95 S.Ct. 2160, 2170, 45 L.Ed.2d 141 (1975). Thus, the work product doctrine applies to both civil and criminal proceedings, although not necessarily in the same fashion. *Coe v. State*, 17 S.W.3d 193, 214 (Tenn.2000); *Boyd v. Comdata Network, Inc.*, 88 S.W.3d at 219. The work product doctrine has now been codified in procedural rules. Tenn. R. Civ. P. 26.02(3) embodies the version of the doctrine applicable to civil proceedings. The version of the doctrine applicable to criminal proceedings is found in Tenn. R.Crim. P. 16(a)(2) [13] which provides:

> Information Not Subject to Disclosure.—Except as provided in paragraphs (A), (B), and (D) of subdivision (a)(1), this rule does not authorize the discovery or inspection of reports, memoranda, or other internal state documents made by the district attorney general or other state agents or law-enforcement officers in connection with the investigation or prosecution of the case, or of statements made by state witnesses or prospective state witnesses.

The work product doctrine is not case specific. *Fine v. Facet Aerospace Prods. Co.*, 133 F.R.D. 439, 445 (S.D.N.Y.1990). Thus, work product that was privileged in prior litigation remains privileged in subsequent litigation. *Downing v. Bowater, Inc.*, 846 S.W.2d 265, 268 (Tenn.Ct.App. 1992); *Arnold v. City of Chattanooga*, 19 S.W.3d at 784. This is especially true when the subsequent litigation is closely related to the prior litigation. *Frontier Ref., Inc. v. Gorman–Rupp Co.*, 136 F.3d 695, 703–04 (10th Cir.1998).

■ The public records statutes have required the courts to consider whether this general rule applies when the government is a litigant. Because of the breadth of Tenn.Code Ann. § 10–7–503(a), the public's right of access to government records must be balanced with the burden that the disclosure of these records will place on the government. *Tennessean v. Electric Power Bd. of Nashville*, 979 S.W.2d at 304. As far as Tenn. R.Crim. P. 16 is concerned, the courts have struck this balance over the past twenty years by holding that Tenn. R.Crim. P. 16(a)(2) does not except records from disclosure when (1) no criminal prosecution is contemplated or pending, (2) the direct appeal is finally concluded, and (3) no collateral challenge to the criminal conviction is pending.

The concept of "final completion" as it applies to civil cases is straightforward. A judgment in a civil case becomes final if a notice of appeal is not filed within thirty days after the entry of a final judgment or an order denying a timely filed Tenn. R. Civ. P. 59 motion. If a timely notice of appeal is filed in a civil case, and the judgment is affirmed on appeal, the judgment becomes final upon the issuance of the appellate court's mandate. Finality in criminal proceedings is far more ephemeral than in civil proceedings. Convictions that have been affirmed on direct appeal are not necessarily final because they remain subject to collateral challenge in both state and federal courts.

---

**13.** Tenn. R.Crim. P. 16, which was adopted in 1978, conforms substantially with Fed. R.Crim.P. 16. *See* Tenn. R.Crim. P. 16, advisory commission cmts.; Tenn. R.Crim. P. 1, advisory commission cmts. (1984); *State v. Hicks*, 618 S.W.2d 510, 514 (Tenn.Crim.App. 1981). Like Tennessee, many other jurisdictions have patterned their version of the work product doctrine applicable to criminal proceedings after Fed.R.Crim.P. 16. *See, e.g., Johnson v. State*, 550 A.2d 903, 912 n. 8 (Del.1988); *People v. Brogan*, 70 Misc.2d 282, 332 N.Y.S.2d 499, 500 (N.Y.Dist.Ct.1972); *State v. Hardy*, 293 N.C. 105, 235 S.E.2d 828, 840 (1977); *State v. Musumeci*, 717 A.2d 56, 60 (R.I.1998).

The Tennessee Supreme Court handed down its first decision reconciling Tenn. R.Crim. P. 16 with the public records statute in 1986. *Memphis Publ'g Co. v. Holt*, 710 S.W.2d 513 (Tenn.1986). The case involved a newspaper reporter who requested access to a police file relating to an investigation that had been closed for twenty-two months. No criminal proceeding was pending or contemplated at the time. The Court ordered the release of the file, noting that Tenn. R.Crim. P. 16 did not "come into play" because the "investigative file sought to be examined ... is a closed file, and is not relevant to any pending or contemplated criminal action." *Memphis Publ'g Co. v. Holt*, 710 S.W.2d at 517.

One year later, the Court reinforced the legal significance of the existence of a pending case or prosecution. *Appman v. Worthington*, 746 S.W.2d 165 (Tenn.1987). A lawyer representing prisoners who had been charged with killing a fellow prisoner invoked the public records statutes to obtain the Department of Correction's internal investigative records regarding the killing. The Court, invoking Tenn. R.Crim. P. 16(a)(2), affirmed the trial court's denial of the lawyer's request for access to the records because the trial of the charges against his clients had not yet occurred. *Appman v. Worthington*, 746 S.W.2d at 166–67.

The first case involving the application of Tenn. R. Crim P. 16 and the public records statute in the context of a collateral attack on a criminal conviction occurred in 1991. *Freeman v. Jeffcoat*, No. 01A01–9103–CV–00086, 1991 WL 165802 (Tenn. Ct.App. Aug. 30, 1991), perm. app. denied (Tenn. May 18, 1992). A lawyer appointed to represent a prisoner in a state post-conviction proceeding sought access to the police files relating to her client's convictions for rape and armed robbery. This court reversed the trial court's denial of the lawyer's request for access to the police files under the public records statutes. We held that Tenn. R.Crim. P. 16(a)(2) protected "records of an investigation while the investigation is in progress and during the pendency of any prosecution arising out of the investigation." *Freeman v. Jeffcoat*, 1991 WL 165802, at *7. We also held that the "pendency of an application for post judgment relief does not ... create an exception to the requirement of disclosure" despite the possibility of a new trial should the post-conviction petition be successful. *Freeman v. Jeffcoat*, 1991 WL 165802, at *7.

We followed the same reasoning approximately six months later in a case involving a prisoner on death row who had filed a federal habeas corpus petition after exhausting his state remedies. *Capital Case Res. Ctr. of Tenn., Inc. v. Woodall*, No. 01A01–9104–CH–00150, 1992 WL 12217 (Tenn.Ct.App. Jan. 29, 1992) (No Tenn. R. App. P. 11 application filed). The lawyers representing the prisoner in the federal proceeding invoked the public records statute to obtain the files maintained by the district attorney general and the police regarding their client's case. This court affirmed the trial court's decision that the closed state prosecution files were public records. Adopting the reasoning of *Freeman v. Jeffcoat*, we held that the "pendency of [a] federal habeas corpus proceeding does not automatically render [the] file relevant to a 'pending or contemplated criminal action.'" *Capital Case Res. Ctr. of Tenn., Inc. v. Woodall*, 1992 WL 12217, at *5.

Two significant changes regarding the application of Tenn. R.Crim. P. 16 to pretrial proceedings in post-conviction cases occurred in 1995 following our decisions in *Freeman v. Jeffcoat* and *Capital Case Res. Ctr. of Tenn., Inc. v. Woodall*. First, the

Tennessee General Assembly enacted the Post–Conviction Procedure Act, Tenn. Code Ann. §§ 40–30–101 to –122 (2003), which explicitly provides that "[d]iscovery is not available in a proceeding under this section except as provided under Rule 16 of the Tennessee Rules of Criminal Procedure." Tenn.Code Ann. § 40–30–109(b). Second, the Tennessee Supreme Court adopted Tenn. S.Ct. R. 28, § 6(B)(3)(c), (C)(7), which also provided that Tenn. R. Crim P. 16 governed pre-trial discovery in post-conviction cases. These changes reflected the policy decisions of both the General Assembly and the Tennessee Supreme Court that Tenn. R. Crim P. 16, rather than the public records statutes, controlled pre-trial discovery in cases where a prisoner was collaterally attacking his or her conviction in state court.

Four years later, this court was presented with an opportunity to revisit the application of Tenn. R.Crim. P. 16 and the public records statutes to a collateral challenge to a criminal conviction. *Waller v. Bryan*, 16 S.W.3d 770. The case involved a state prisoner who had filed a *pro se* post-conviction petition in state court and a *pro se* habeas corpus petition in federal court challenging his 1992 convictions for first degree murder, especially aggravated robbery, and theft. While the state and federal proceedings were pending, the prisoner made a request under the public record statutes for copies of photographs taken during the investigation of his crimes. This court affirmed the trial court's denial of the prisoner's request. We held that the photographs were not discoverable based on Tenn.Code Ann. § 40–30–109(b) and Tenn. S.Ct. R. 28, § 6(B)(3)(c), (C)(7). *Waller v. Bryan*, 16 S.W.3d at 777.

We based our holding in *Waller v. Bryan* on the fact that a state post-conviction proceeding was pending when the prisoner made his public records act request. Because of the pending post-conviction proceeding, we had no occasion to address the legal significance of the pending federal habeas corpus proceeding. However, from *Memphis Publ'g Co. v. Holt* to *Waller v. Bryan*, the courts have demonstrated that they will decline to permit litigants against the State to use the public records statutes to obtain more discovery than Tenn. R.Crim. P. 16 permits when a criminal investigation is in progress, a criminal prosecution is pending, or when a prisoner is collaterally attacking his or her conviction in state court under the Post–Conviction Procedure Act.

## V.

### APPLICATION OF TENN. R.CRIM. P. 16 TO REQUESTS FOR RECORDS WHEN A FEDERAL HABEAS CORPUS PROCEEDING IS PENDING

■ The narrow question we must decide in this case is whether the State's investigative and prosecutorial work product prepared in the defense of Mr. Workman's writ of error coram nobis proceeding in state court is a public record that must be disclosed to Mr. Workman's lawyers or to any other interested citizen. Mr. Workman, relying on *Capital Case Res. Ctr. of Tenn., Inc. v. Woodall*, insists that the materials are public records. The State, relying chiefly on *Waller v. Bryan*, insists that they are not. The State has the better argument.

Embedded in the cases reviewed in Section IV is the question of whether the courts of this state should allow the public records statute to be used to circumvent the rules of discovery governing civil and criminal judicial proceedings. There is a palpable difference between persons who seek governmental records to ensure governmental responsibility and public accountability and those who seek to avoid

the requirements and limitations of the Tennessee Rules of Civil and Criminal Procedure by invoking the public records statutes to obtain information not otherwise available to them through discovery. Circumventing existing discovery rules was not what the General Assembly had in mind when it enacted the public records statutes in 1957.

The clear public policy of Tennessee, reflected in Tenn.Code Ann. § 40–30–109(b), Tenn. S.Ct. R. 28, § 6(B)(3)(c), (C)(7), and Tenn. R.Crim. P. 16(a)(2), is that the documents described in Tenn. R.Crim. P. 16(a)(2) are not discoverable in either proceedings to which the Tennessee Rules of Criminal Procedure apply or separate proceedings under Tenn.Code Ann. § 10–7–505 as long as the criminal conviction associated with the records being sought is being collaterally attacked. There is no logical reason to differentiate between pending state post-conviction proceedings and federal habeas corpus proceedings. Discovery in Mr. Workman's pending federal habeas corpus proceeding should be governed by the federal rules applicable to that proceeding, and Tennessee's public records statutes should not be used to circumvent these rules.

For the foregoing reasons, documents of the sort covered by Tenn. R. Crim P. 16(a)(2) that are in the possession of the Office of the District Attorney General of the Thirtieth Judicial District are not public records because they are among the class of records excepted from disclosure by state law. Accordingly, the trial court correctly denied Ms. Swift's petition to compel the State to permit her to inspect and copy these records.

## VI.

### The State's Other Privilege Claims

Not content to rely solely on its defense that the documents requested by Ms. Swift were not public records by virtue of Tenn. R.Crim. P. 16(a)(2), the State offers three other alternative theories to justify its opposition to producing the documents. We decline to accredit any of these theories because they lack logic and legal support.

### A.

### Federal Pre-emption of the Public Records Statutes

■ The State asserts that discovery in federal habeas corpus proceedings is governed by federal statutes and rules and that these rules somehow pre-empt Tennessee's public records statutes when it comes to discovery in federal court. This argument is somewhat difficult to follow for two reasons. First, Tennessee's public records statutes have never purported to apply to proceedings in federal court. Second, there is no evidence whatsoever that the rules of procedure governing practice in the federal courts were intended to pre-empt state laws governing access to their own records.

■ The fundamental question in every pre-emption analysis is one of congressional intent. *Geier v. American Honda Motor Co.*, 529 U.S. 861, 884, 120 S.Ct. 1913, 1927, 146 L.Ed.2d 914 (2000); *Barnett Bank of Marion County, N.A. v. Nelson*, 517 U.S. 25, 30, 116 S.Ct. 1103, 1107, 134 L.Ed.2d 237 (1996). Did Congress, by enacting the federal law, intend to exercise its constitutionally delegated authority to displace state law? If so, the Supremacy Clause of the United States Constitution, U.S. Const. art. VI, cl. 2, requires courts to follow federal rather than state law. However, the courts will not interpret federal law to pre-empt state law unless that is the clear and manifest purpose of Congress. *Rice v. Santa Fe*

*Elevator Corp.*, 331 U.S. 218, 230, 67 S.Ct. 1146, 1152, 91 L.Ed. 1447 (1947).

When the federal law contains an express pre-emption clause, the plain meaning of the clause is the best evidence of pre-emptive intent. *Sprietsma v. Mercury Marine*, 537 U.S. 51, 62–63, 123 S.Ct. 518, 526, 154 L.Ed.2d 466 (2002). In the absence of explicit pre-emption language, the court must consider whether the federal law's structure and purpose reveal a clear, but implicit, pre-emptive intent. *Barnett Bank of Marion County, N.A. v. Nelson*, 517 U.S. at 31, 116 S.Ct. at 1108. Implied pre-emption takes two forms. Field pre-emption occurs when the scheme of the federal regulation is so pervasive as to make reasonable the inference that Congress left no room for the states to supplement it. Conflict pre-emption arises when compliance with both federal and state law is impossible or when state law presents an obstacle to the accomplishment of the full purposes and objectives of Congress. *Gade v. National Solid Wastes Mgmt. Ass'n*, 505 U.S. 88, 98, 112 S.Ct. 2374, 2383, 120 L.Ed.2d 73 (1992).

The parties have not cited, and our research has not uncovered, any case in which federal law required the disclosure of state or local government records that were shielded from disclosure by state law. To the contrary, one Tennessee case has used federal confidentiality requirements as a basis for declining to make records available under Tennessee's public records statutes. *Seaton v. Johnson*, 898 S.W.2d 232 (Tenn.Ct.App.1995). As a condition to receiving federal funds, the Tennessee Department of Transportation was required to compile data regarding the safety of the railroad crossings in Tennessee. Federal law explicitly stated that the collected data "shall not be subject to discovery or admitted into evidence in a Federal or State court proceeding." A lawyer representing the estate of two children killed in a collision between a train and an automobile requested access to the Department of Transportation's data under the public records statutes. Both the trial court and this court determined that the requested records were not public records because of the federal law prohibiting their release. *Seaton v. Johnson*, 898 S.W.2d at 236. Because the records were created and maintained in accordance with a federal law explicitly requiring their confidentiality, the State was prevented from making them available for inspection and copying under the public records statutes.

Neither the Federal Rules of Civil Procedure nor the Rules Governing Section 2254 Cases in the United States District Courts ("Habeas Corpus Rules") contain an explicit pre-emption provision applicable to public records proceedings in state court. In addition, we find no basis to invoke either field or conflict pre-emption because these federal rules were adopted chiefly to govern practice in the federal courts, and not to displace state substantive laws regarding access to official records. Control over access to state or local government records is a central attribute of state sovereignty. Thus, in the absence of a clear and manifest expression of intent to the contrary, we decline to hold that the rules governing proceedings in federal courts pre-empt Tennessee's public records statutes.[14]

---

14. It would be a legal non sequitur to argue that the state public records laws somehow pre-empt federal discovery rules. The Supremacy Clause is a one-way street. Discovery in federal habeas corpus proceedings is governed by the Habeas Corpus Rules. No discovery is permitted unless justice requires it, and, according to Habeas Corpus Rule 6(a), decisions regarding whether to permit discovery are within the federal court's discretion. When presented with a discovery request seeking records that are confidential

## B.

### The Law Enforcement Investigative Privilege

 The State also invokes what it calls the "law enforcement investigative privilege" as a basis for not releasing the records sought by Ms. Swift. It points to no Tennessee law, statutory or otherwise, that purports to recognize this privilege, and it likewise does not explain how the contours of this privilege differ from the provisions of Tenn. R.Crim. P. 16(a)(2) which we have already discussed at length in Section V.[15] Weighed against the clear state policy favoring the openness of governmental records, the State's efforts to convince us to recognize this new privilege fall short. As we did with regard to a claimed "informer's privilege" in an earlier case, we will leave it to the criminal courts to address this new privilege. *Eldridge v. Putnam County*, 86 S.W.3d 572, 575 (Tenn.Ct.App.2001). When public records claims are involved, we will continue to rely on Tenn. R.Crim. P. 16.

## C.

### The Deliberative Process Privilege

 Finally, the State argues that the records maintained by the Office of the District Attorney General for the Thirtieth Judicial District should be shielded from public inspection by the "deliberative process privilege." We have no doubt that there exists a valid need to protect the communications between high government officials and those who advise and assist them in the performance of their official duties. *United States v. Nixon*, 418 U.S. 683, 705, 94 S.Ct. 3090, 3106, 41 L.Ed.2d 1039 (1974). However, an assistant district attorney general preparing to defend a conviction in state court is not the sort of official to whom this privilege applies.

Protecting the confidentiality of conversations and deliberations among high government officials ensures frank and open discussion and, therefore, more efficient government operations. *United States v. Weber Aircraft Corp.*, 465 U.S. 792, 802, 104 S.Ct. 1488, 1494, 79 L.Ed.2d 814 (1984). However, the deliberative process privilege must be applied cautiously because it could become the exception that swallows up the rule favoring governmental openness and accountability. If governmental employees at any level could claim the privilege, Tennessee's public records statutes and open meetings law[16] would become little more than empty shells.

Whether the "deliberative process privilege" may be invoked depends on the governmental official or officials involved. We have no doubt, for example, that the Governor may properly invoke this privilege, should he or she care to, in meetings with staff or cabinet members. We have also held that the Constitution of Tennessee embodies a version of the privilege for the General Assembly when it decides to invoke it. *Mayhew v. Wilder*, 46 S.W.3d

---

under state law, the federal courts will conduct their own balancing of the public and private interests at stake, as well as their own analysis of the applicable legal principles.

15. The other jurisdictions that have recognized this privilege state that it is aimed at preventing "disclosure of law enforcement techniques and procedures, to preserve the confidentiality of sources, to protect witness and law enforcement personnel, to safeguard the privacy of individuals involved in an investigation, and otherwise to prevent interference with an investigation." *United States v. Myerson*, 856 F.2d 481, 484 (2d Cir.1988). Based on this description, there appears to be a substantial overlap between this privilege and Tenn. R.Crim. P. 16(a)(2).

16. Tenn.Code Ann. §§ 8–44–101 to –108 (2002).

760, 772 (Tenn.Ct.App.2001) (holding that the public does not have a right of access to all legislative meetings because of Tenn. Const. art. II, §§ 21 and 22). However, we decline to hold that the privilege applies to an assistant district attorney general preparing for a hearing in state court involving a writ of error coram nobis proceeding under Tenn.Code Ann. § 40–26–105. Tenn. R.Crim. P. 16 adequately protects his or her work product.

### VII.

We affirm the judgment denying Ms. Swift's petition to gain access to the documents pertaining to Mr. Workman's writ of error coram nobis proceeding in state court. Our decision is limited to the documents in the possession of the Office of the District Attorney General for the Thirtieth Judicial District that are described in Tenn. R.Crim. P. 16(a)(2). We remand the case to the trial court for any further proceedings consistent with this opinion that may be required, and we tax the costs of this appeal in equal proportions to Gretchen Swift and the State of Tennessee.