# IN THE SUPREME COURT OF TENNESSEE
## AT NASHVILLE
### December 18, 2014 Session

## STEPHEN MICHAEL WEST ET AL. V. DERRICK D. SCHOFIELD ET AL.

**Appeal by Permission from the Court of Appeals, Middle Section**
**Chancery Court for Davidson County**
**No. 131627I     Claudia C. Bonnyman, Chancellor**

---

**No. M2014-00320-SC-R11-CV - Filed March 10, 2015**

---

GARY R. WADE, J., concurring in the judgment only.

I concur in the conclusion reached by my colleagues that the identities of the John Doe defendants are not discoverable under Tennessee Rule of Civil Procedure 26.02(1). In my view, however, the majority opinion contains dicta that unnecessarily addresses several issues with far-reaching implications in death penalty litigation. Therefore, I must respectfully concur in the result only.

## I. Summary of Facts and Procedural History

Thirty-six death row inmates (the "inmates") in Tennessee have joined in a lawsuit challenging the constitutionality of the new one-drug lethal injection protocol adopted by the Department of Correction. The inmates have presented a facial challenge, which involves the constitutionality of a statute as written, and as-applied challenges, which involve how a statute "operates in practice against the particular litigant[s] and under the facts of the instant case." State v. Crank, No. E2012-01189-SC-R11-CD, 2015 WL 603158, at *7 n.5 (Tenn. Feb. 13, 2015) (quoting City of Memphis v. Hargett, 414 S.W.3d 88, 107 (Tenn. 2013)); see also 16 C.J.S. Constitutional Law § 187, at 274 (2005). During the discovery process, the inmates filed a motion to compel the State to disclose the identities and locations of the physicians, pharmacists, medical examiners, medical personnel, and executioners who are, had been, or might be involved in the creation, production, or administration of the lethal injection protocol. The trial court granted the motion to compel, ordering the State to provide the information subject only to the terms of an agreed protective order. The Court of Appeals affirmed. West v. Schofield, No. M2014-00320-COA-R9-CV, 2014 WL 4815957, at *1 (Tenn. Ct. App. Sept. 29, 2014). Because of the critical importance of this issue, this Court granted review on the State's interlocutory appeal.

## II. Standard of Review

When there is a pretrial discovery dispute, the trial court is afforded discretionary authority. Lee Med., Inc. v. Beecher, 312 S.W.3d 515, 524 (Tenn. 2010). Absent an abuse of that discretion, the appellate courts should not interfere with the orderly processes leading to trial. "'A court abuses its discretion [only] when it applies an incorrect legal standard or its decision is illogical or unreasonable, is based on a clearly erroneous assessment of the evidence, or utilizes reasoning that results in an injustice to the complaining party.'" State v. Adams, 405 S.W.3d 641, 660 (Tenn. 2013) (quoting Wilson v. State, 367 S.W.3d 229, 235 (Tenn. 2012)).

## III. Analysis

The general scope and limits of discovery are governed by Tennessee Rule of Civil Procedure 26.02(1), which provides as follows:

> Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the party seeking discovery or to the claim or defense of any other party, including the . . . identity and location of persons having knowledge of any discoverable matter. It is not ground for objection that the information sought will be inadmissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence.

Although Rule 26.02(1) "reflect[s] a broad policy favoring discovery of all relevant, non-privileged information," Lee Med., Inc., 312 S.W.3d at 525, "[a]nalyzing whether a discovery request is proper requires the balancing of numerous considerations," which, in addition to privilege and relevance, include "protection of privacy, property and secret matters[,] and protection of parties or persons from annoyance, embarrassment, oppression, or undue burden or expense," Johnson v. Nissan N. Am., Inc., 146 S.W.3d 600, 605 (Tenn. Ct. App. 2004) (quoting Clark A. Nichols et al., Cyclopedia of Federal Procedure § 25.34 (3d ed. 2001)).

By the application of these principles, I can agree with the majority that the identities of the John Doe defendants are not relevant to the inmates' facial challenge to the constitutionality of the lethal injection protocol. In this regard, I am able to concur that the trial court applied an incorrect legal standard in the consideration of the motion to compel. Insofar as the inmates have asserted as-applied challenges to the protocol, I would find that even if the identities of the John Doe defendants were relevant, the protection of these persons or entities from annoyance, embarrassment, or harassment sufficiently outweighs the request by the inmates to have knowledge of their identities or their locations. In this regard,

-2-

I would hold that the trial court exceeded its discretionary authority by compelling disclosure of the requested information. This is particularly so because the State has offered to provide the professional qualifications of the John Doe defendants and to make these individuals available for screened depositions, thereby permitting the inmates to effectively cross-examine the persons responsible for the creation, production, and administration of the one-drug protocol.

In my view, this ruling pretermits any consideration of whether the requested information qualifies as privileged. A significant portion of the majority opinion, however, addresses common law privilege and public policy concerns. This is simply not necessary. Furthermore, I am unable to concur with the majority as to the justiciability of an as-applied challenge in the death penalty context.

## A. Privilege

Initially, I fully agree with the majority that "the trial court, by granting the [inmates'] motion to compel, clearly concluded that the identities of the John Doe [d]efendants were not privileged." The majority also properly observes that "[t]he [inmates] have not sought the identities of the John Doe [d]efendants pursuant to a request under the Public Records Act," and that "the instant lawsuit is not a petition for enforcement of the Public Records Act." See Tenn. Code Ann. §§ 10-7-101 to -702 (2012).[1] However, the majority's consideration of the adoption of a common law privilege, which would preclude under any circumstances the disclosure of the identities of individuals involved in the execution process, is a brush with too broad a stroke.

First, the majority neither cites nor considers prior opinions of this Court which would provide general guidance in whether to adopt a common law privilege. See, e.g., Schneider v. City of Jackson, 226 S.W.3d 332, 342-44 (Tenn. 2007) (explaining that the Court of Appeals erred by recognizing a law enforcement privilege, in part because it "relied exclusively upon federal court decisions and decisions of other state courts"); Quarles v. Sutherland, 389 S.W.2d 249, 251 (Tenn. 1965) (declining to recognize a physician-patient privilege in civil litigation despite acknowledging physicians' ethical requirements to preserve the privacy of their patients). Second, it does not appear that any other jurisdiction has recognized an executioner-identity privilege as a matter of common law; while the majority cites opinions from other states preventing the disclosure of executioners' identities,

---

[1] The relevant subsection of the Public Records Act states that "parts of the record identifying an individual or entity as a person or entity who or that has been or may in the future be directly involved in the process of executing a sentence of death shall be treated as confidential and shall not be open to public inspection." Id. § 10-7-504(h)(1) (emphasis added). In this instance, the identities of the John Doe defendants have not been requested for "public inspection."

all of those rulings are based in statutory law. Finally, I cannot agree with the majority that "[t]hese authorities make clear that, not only has our legislature declared the public policy of Tennessee to favor the anonymity of those involved in carrying out capital punishment, but there is neither a statutory nor a constitutional barrier to the adoption of a common law privilege."

A privilege is "[a] <u>special</u> legal right, exemption, or immunity granted to a person or class of persons" in certain limited circumstances. <u>Black's Law Dictionary</u> 1316 (9th ed. 2009) (emphasis added).[2] Thus, the standard for adopting a new common law privilege is not whether there is a barrier to the privilege, but whether the privilege is <u>necessary</u> in light of our public policy. <u>See</u> <u>Simpson Strong-Tie Co. v. Stewart, Estes & Donnell</u>, 232 S.W.3d 18, 22-23 (Tenn. 2007) (observing that the litigation privilege was adopted because of its importance to "the public good" and "the integrity of our judicial system"). In light of our ruling that the identities of the John Doe defendants are not discoverable under Tennessee Rule of Civil Procedure 26.02(1), I do not see how the establishment of a new privilege might be "necessary" in this context. <u>Cf.</u> <u>Swift v. Campbell</u>, 159 S.W.3d 565, 578 (Tenn. Ct. App. 2004) (declining to recognize a law enforcement privilege in part because the material in question was already protected by Tennessee Rule of Criminal Procedure 16). Moreover, even if the Public Records Act were at issue in this case, I cannot agree that an interpretation of that Act, as stated by a single member of our General Assembly, is indicative of public policy on the question of privilege. <u>See</u> <u>Crawford v. Buckner</u>, 839 S.W.2d 754, 759 (Tenn. 1992) (citing the longstanding principle that "[t]he public policy of Tennessee is to be found in its constitution, statutes, judicial decisions and applicable rules of common law" (quoting <u>Home Beneficial Ass'n v. White</u>, 177 S.W.2d 545, 546 (Tenn. 1944)) (internal quotation marks omitted)); <u>see also</u> <u>In re Baby</u>, 447 S.W.3d 807, 822-37 (Tenn. 2014) (acknowledging that the legislative history of our surrogacy statute "confirm[ed] the absence of any policy against traditional surrogacy" as determined by an exhaustive review of the common law of contracts, the Tennessee Constitution, and numerous statutes related to surrogacy, adoption, custody, parental rights, and artificial insemination).

In consequence, I depart from the language offered by my colleagues on the question of common law privilege. <u>See, e.g.</u>, <u>PDK Labs. Inc. v. U.S. DEA</u>, 362 F.3d 786, 799 (D.C. Cir. 2004) (Roberts, J., concurring in part and concurring in the judgment) (relying upon "the cardinal principle of judicial restraint" that "if it is not necessary to decide more, it is necessary not to decide more"); <u>Jordan v. Knox Cnty.</u>, 213 S.W.3d 751, 780 (Tenn. 2007)

---

[2] Notably, although <u>Black's Law Dictionary</u> lists a variety of specific privileges, there is no definition of an "executioner-identity" privilege for discovery in civil litigation, as the State has urged this Court to adopt. <u>See</u> <u>id.</u> at 1316-19.

(recognizing that appellate judges should refrain from commenting sua sponte on matters of public policy).

## B. Justiciability

I am likewise unable to concur in the majority's discussion as to when and how a death row inmate may raise a justiciable challenge to the application of an execution protocol. While the majority "question[s] whether the allegations of the [c]omplaint actually are sufficient to constitute an as applied challenge to the [p]rotocol," the opinion denies the inmates "discovery of information as to claims that are merely speculative and do not present a justiciable controversy." Thus, it is not clear whether the majority believes that the inmates have simply failed to raise any as-applied challenges, or that the inmates have raised as-applied challenges that are non-justiciable because they "hypothetically may be applied on some uncertain date in the future by currently unidentifiable persons." In my view, the analysis of the majority injects confusion into the adjudication of an as-applied challenge in death penalty litigation.

While the majority refers to justiciability in general, there are several varieties of the doctrine. See Norma Faye Pyles Lynch Family Purpose LLC v. Putnam Cnty., 301 S.W.3d 196, 203 (Tenn. 2009) (listing the justiciability doctrines recognized by Tennessee courts to include the prohibition against advisory opinions, standing, ripeness, mootness, the political question doctrine, and the exhaustion of administrative remedies). Based on the numerous references to the inmates' claims as "hypothetical," "in the future," and "speculative," the majority appears to be applying the doctrine of ripeness. See, e.g., B & B Enters. of Wilson Cnty., LLC v. City of Lebanon, 318 S.W.3d 839, 848 (Tenn. 2010) ("The central concern of the ripeness doctrine is whether the case involves uncertain or contingent future events that may or may not occur as anticipated or, indeed, may not occur at all."). This is an important clarification because the doctrine of ripeness involves additional considerations not mentioned by the majority. As our Court of Appeals has explained,

> [Q]uestions of ripeness involve a two-step analysis: (1) the fitness of the issue for judicial determination[,] and (2) the hardship to the parties of withholding court consideration. In most situations where ripeness is an issue, "The courts will decline to act in cases where there is no need for the court to act or where the refusal to act will not prevent the parties from raising the issue at a more appropriate time."

Consol. Waste Sys., LLC v. Metro. Gov't of Nashville & Davidson Cnty., No. M2002-02582-COA-R3-CV, 2005 WL 1541860, at *26 (Tenn. Ct. App. June 30, 2005) (emphasis added) (citations omitted).

Because it rejects as premature the inmates' attempt to challenge the lethal injection protocol on an as-applied basis, the majority appears to create a procedural dilemma. By describing the inmates' claims as "hypothetical" because the protocol "may be applied on some uncertain date in the future by currently unidentifiable persons," the question left unanswered by the majority is, if not ripe now, when? In my view, because some of the inmates in this litigation currently have dates of execution set, their executions cannot be described as occurring "on some uncertain date in the future." As to those inmates whose execution dates have been postponed during the pendency of this very litigation, the fact that their execution dates have been rendered "uncertain" by order of this Court should not preclude the consideration of their claims. Moreover, because the State has offered to produce the professional qualifications of the John Doe defendants and to make them available for screened depositions, it is apparent that they are not "currently unidentifiable."

In my view, any as-applied challenges raised by the inmates in this litigation are ripe for adjudication. Moreover, deciding all of the claims at this time would further the interests of judicial economy. For these reasons, I cannot join with my colleagues on the question of justiciability.

## IV. Conclusion

I agree that the identities of the John Doe defendants are not subject to discovery under Tennessee Rule of Civil Procedure 26.02(1). Because, however, I am unable to concur in the other portions of the majority opinion, I must respectfully concur in the result only.

_____
GARY R. WADE, JUSTICE

-6-