IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
December 9, 2004 Session

GREGORY FODNESS v. NEWPORT AND COCKE COUNTY ECONOMIC
DEVELOPMENT COMMISSION, INC.

Appeal from the Chancery Court for Cocke County
No. 03-076     Telford E. Forgety, Jr., Chancellor

No. E2004-01491-COA-R3-CV - FILED MARCH 16, 2005

This case involves the interpretation of a portion of the Tennessee Public Records Act, Tenn. Code Ann. § 10-7-503.  The issue presented is whether the statutory exemption set forth in  Tenn. Code Ann. § 10-7-503(d)(1) is available to the Appellee which is a nonprofit joint municipal-county economic development commission.  The trial court granted the commission's motion for summary judgment, finding that the exemption was applicable and the commission did not have to provide its records to the Appellant.  We hold that the commission is entitled to the statutory exemption, but that there is a genuine question of material fact as to whether the commission is the functional equivalent of a public agency. Accordingly, we vacate the judgment and remand for further proceedings consistent with this opinion.

Tenn.R.App.P. 3 Appeal as of Right; Judgment of the Trial Court Vacated;
Case Remanded

SHARON G. LEE, J., delivered the opinion of the court, in which HERSCHEL P. FRANKS, P.J., joined.
CHARLES D. SUSANO, JR., J., filed a separate opinion concurring in part and dissenting in part.

David B. Hamilton, Knoxville, Tennessee, for Appellant Gregory Fodness.

Clyde A. Dunn, Newport, Tennessee, for Appellee Newport and Cocke County Economic Development Corporation., Inc.

OPINION

On November 20, 2003, the Appellant, Gregory Fodness, filed this action alleging that the Newport and Cocke County Economic Development Commission (hereinafter "the Commission") violated the Tennessee Public Records Act by failing to provide certain records to Mr. Fodness

which he alleged were public.[1] The Commission answered and alleged, among other things, that it was entitled to the statutory exemption provided at Tenn. Code Ann. § 10-7-503(d)(1), and thus not required to provide the requested information.

The Commission moved for summary judgment on the grounds that there was no genuine issue of disputed fact regarding its assertion that it had met all of the requirements set forth by the statute. After a hearing on May 18, 2004, the trial court granted summary judgment to the Commission, finding that the Commission was exempt from the Public Records Act because it had filed an audit. Further, the trial court found that the case of *Memphis Publishing Co. v. Cherokee Children & Family Services, Inc.,* 87 S.W.3d 67 (Tenn.2002) did not negate the clear exemption provided by Tenn. Code Ann. § 10-7-503(d). Mr. Fodness appeals.

The issue in this case is whether the trial court erred in granting the Commission summary judgment.

Our standard of review regarding summary judgment is well settled. A motion for summary judgment should be granted when the movant demonstrates that there are no genuine issues of material fact and that the moving party is entitled to a judgment as a matter of law. Tenn.R.Civ.P. 56.04. The party moving for summary judgment bears the burden of demonstrating that no genuine issue of material fact exists. *Bain v. Wells,* 936 S.W.2d 618, 622 (Tenn.1997). On a motion for summary judgment, the court must take the strongest legitimate view of the evidence in favor of the nonmoving party, allow all reasonable inferences in favor of that party, and discard all countervailing evidence. *Byrd v. Hall,* 847 S.W.2d 208 (Tenn.1993).

Summary judgment is only appropriate when the facts and the legal conclusions drawn from the facts reasonably permit only one conclusion. *Carvell v. Bottoms,* 900 S.W.2d 23, 26 (Tenn.1995). Since only questions of law are involved, there is no presumption of correctness regarding a trial court's grant of summary judgment. *Bain,* 936 S.W.2d at 622. Therefore, our review of the trial court's grant of summary judgment is *de novo* on the record before this court. *Warren v. Estate of Kirk,* 954 S.W.2d 722, 723 (Tenn.1997).

This case requires an interpretation of the Tennessee Public Records Act and therefore we must "ascertain and give effect to the legislative intent without restricting or expanding a statute's

---

[1]The pleadings do not describe exactly what records Mr. Fodness requested. The record does contain a copy of an online article of the *Newport Plain Talk*, filed as an exhibit with the trial court, stating that Mr. Fodness had requested the following:

> All paperwork, correspondence, notes, e-mails, and/or faxes regarding the lease/purchase of the former Virco building to Eagle Plastics and Rubber.
> All paperwork, correspondence, notes, e-mails, and faxes between the owners of the Virco building and Donald Hurst [Executive Director of the Commission] regarding the donation of the Virco building to the Cocke County EDC.
> All paperwork, correspondence, notes, e-mails, and/or faxes regarding the lease/purchase of the Virco building to Great Lakes Chemical Corporation.

coverage beyond its intended scope." *Owens v. State,* 908 S.W. 2d 923,926 (Tenn. 1995). Issues involving construction of a statute and its application to facts involve questions of law. *Memphis Publishing Co. v. Cherokee Children & Family Services, Inc.,* 87 S.W.3d 67 (Tenn. 2002). Therefore the trial court's resolution of these issues is not entitled to Tenn. R. App. P 13(d)'s presumption of correctness on appeal. We will review these issues *de novo* and reach our own independent conclusions regarding them. *King v. Pope*, 91 S.W. 2d 314, 318 (Tenn. 2002).

The Commission, a nonprofit corporation, was chartered for the purposes of advancing the economic, industrial, professional, cultural, and civic welfare for Newport and Cocke County; encouraging the growth of existing industries and businesses; supporting all activities beneficial to the community and opposing those which might be detrimental; and promoting the welfare of all area citizens. It is governed by a board of directors composed of various public officials representing Cocke County and the cities of Newport and Parrottsville, a landowner selected by the Cocke County Farm Bureau, and individuals representing various utility boards, banks and a local hospital.

On October 21, 2003, Gregory Fodness requested certain records from the Commission. There is some dispute as to whether Mr. Fodness was actually denied the records or just failed to make an appointment in order to obtain the records, but in any event, Mr. Fodness did not receive the records and filed suit to gain access to the Commission's records under the Tennessee Public Records Act.

The Tennessee Pubic Records Act "governs the right of access to records of government agencies in the State." *Cole v. Campbell,* 968 S.W. 2d 274, 275 ( Tenn.1998). The Act "serves a crucial role in promoting accountability in government though public oversight of governmental activity". *Memphis Publishing Co. v. Cherokee Children & Family Services, Inc.,* 87 S.W.3d 67,74 (Tenn.2002).

In construing the Public Records Act, we are guided by the General Assembly's directive that the public records statutes are to be "broadly construed so as to give the fullest possible public access to public records." Tenn. Code Ann. § 10-7-505(d); *see also Chattanooga Publishing Co. v. Hamilton Co. Election Comm'n,* C/A No. E2003-00076-COA-R3-CV, 2003 WL 22469808, at * 4, 2003 Tenn. App. LEXIS 767, at * 11 (Tenn. Ct. App. E.S. filed Oct. 31, 2003) and cases cited therein. In deciding whether the records are subject to public disclosure we must be guided by the clear legislative policy favoring disclosure. Thus, unless it is clear that disclosure of a record or class of records is excepted from disclosure, we must require disclosure even in the face of "serious countervailing considerations." *Memphis Publ'g Co. v. City of Memphis,* 871 S.W.2d at 684, *Swift v. Campbell*, C/A No. M2003-02607-COA-R3-CV, 2004 WL 1920783, at * 4, 2004 Tenn. App. LEXIS 561, at *13-14 (Tenn. Ct. App. M.S. filed Aug. 25, 2004), *appl. perm. appeal denied January 31, 2005.*

The relevant portion of the Public Records Act at issue here, Tenn. Code Ann. § 10-7-503, provides:

(a) Except as provided in § 10-7-504(f), all state, county and municipal records. . . shall at all times, during business hours, be open for personal inspection by any citizen of Tennessee, and those in charge of such records shall not refuse such right of inspection to any citizen, unless otherwise provided by state law.

*         *         *

(d)(1) All records of any association or nonprofit corporation described in § 8-44-102(b)(1)(E)(i) shall be open for inspection as provided in subsection (a); provided, that any such organization shall not be subject to the requirements of this subsection so long as it complies with the following requirements:

(A) The board of directors of the organization shall cause an annual audit to be made of the financial affairs of the organization, including all receipts from every source and every expenditure or disbursement of the money of the organization, made by a disinterested person skilled in such work. Each audit shall cover the period extending back to the date of the last preceding audit and it shall be paid out of the funds of the organization;

(B) Each audit shall be conducted in accordance with the standards established by the comptroller of the treasury pursuant to § 4-3-304(9) for local governments;

(C) The comptroller of the treasury, through the department of audit, shall be responsible for ensuring that the audits are prepared in accordance with generally accepted governmental auditing standards, and determining whether the audits meet minimum audit standards which shall be prescribed by the comptroller of the treasury. No audit may be accepted as meeting the requirements of this section until such audit has been approved by the comptroller of the treasury;

(D) The audits may be prepared by a certified public accountant, a public accountant or by the department of audit. If the governing body of the municipality fails or refuses to have the audit prepared, the comptroller of the treasury may appoint a certified public accountant or public accountant or direct the department to prepare the audit. The cost of such audit shall be paid by the organization;

(E) Each such audit shall be completed as soon as practicable after the end of the fiscal year of the organization. One (1) copy of each audit shall be furnished to the organization and one (1) copy shall be filed with the comptroller of the treasury. The copy of the comptroller of the treasury shall be available for public inspection. Copies of each audit shall also be made available to the press; and

(F) In addition to any other information required by the comptroller of the treasury, each audit shall also contain:

(i) A listing, by name of the recipient, of all compensation, fees or other remuneration paid by the organization during the audit year to, or accrued on behalf of, the organization's directors and officers;

(ii) A listing, by name of recipient, of all compensation and any other remuneration paid by the organization during the audit year to, or accrued on behalf of, any employee of the organization who receives more than twenty-five thousand dollars ($25,000) in remuneration for such year;

(iii) A listing, by name of beneficiary, of any deferred compensation, salary continuation, retirement or other fringe benefit plan or program (excluding qualified health and life insurance plans available to all employees of the organization on a nondiscriminatory basis) established or maintained by the organization for the benefit of any of the organization's directors, officers or employees, and the amount of any funds paid or accrued to such plan or program during the audit year; and

(iv) A listing, by name of recipient, of all fees paid by the organization during the audit year to any contractor, professional advisor or other personal services provider, which exceeds two thousand five hundred dollars ($2,500) for such year. Such listing shall also include a statement as to the general effect of each contract, but not the amount paid or payable thereunder.

The provisions of this subsection shall not apply to any association or nonprofit corporation described in § 8-44-102(b)(1)(E)(i), that employs no more than two (2) full-time staff members.

(2) The provisions of this subsection (d) shall not apply to any association, organization or corporation that was exempt from federal income taxation under the provisions of § 501(c)(3) of the Internal Revenue Code (26 U.S.C. § 501(c)(3)) as of January 1, 1998, and which makes available to the public its federal return of organization exempt from income tax (Form 990) in accordance with the Internal Revenue Code and related regulations.

It is undisputed that the Commission is an "association or nonprofit corporation described in § 8-44-102(b)(1)(E)(i)."[2] It is undisputed that the Commission has filed an annual audit required by subsection (d)(1) cited above. But it is disputed whether the Commission has one employee or two or more employees.

Mr. Fodness makes two arguments in support of his contention that the Commission is not entitled to the exemption even though it complied with the audit requirement. First, he argues that the second sentence in Tenn. Code Ann. § 10-7-503(d)(1)(F)(iv) quoted above, providing that "this section" is inapplicable to an association or nonprofit corporation employing two or fewer full-time staff members, and should be construed as barring the Commission from claiming the exemption. Mr. Fodness argues that in order to be eligible for the statutory audit exemption, an association or nonprofit corporation must comply with the audit requirements found at Tenn. Code Ann. § 10-7-503(d)(1)(A-F) *and* employ two or fewer full-time staff members. Second, Mr. Fodness argues that the Supreme Court's decision in *Memphis Publishing Co. v. Cherokee Children & Family Services, Inc.,* 87 S.W.3d 67 (Tenn.2002), effectively precludes the Commission from being eligible for the audit exemption. The Commission argues that the audit exemption applies to an association or nonprofit corporation which *either* meets the audit requirements *or* employs two or fewer staff members. We do not agree with either the position taken by Mr Fodness or that of the Commission.

After carefully reviewing the statute, we are of the opinion that the final sentence of Tenn. Code § 10-7-503(d)(1)(F)(iv), stating "[t]he provisions of *this subsection* shall not apply to any association or nonprofit corporation described in § 8-44-102(b)(1)(E)(i), that employs no more than two (2) full-time staff members," [emphasis added] applies to the whole of subsection (d) of the statute, and, therefore, any such nonprofit corporation or association is not governed by the Public Records Act. The sentence as written is ambiguous as to precisely which subsection it refers. Therefore we have reviewed the legislative history of Tenn. Code Ann.§ 10-7-503(d)(1)(F)(iv) and it is clear to us that the legislature determined that certain small nonprofit associations that have two or less employees submit an annual audit to the elected officials in the communities that they serve. The transcript of the legislative hearing on the bill that became the statutory section at issue provides as follows:

---

[2]Tenn. Code Ann. § 8-44-102(a) provides that "[a]ll meetings of any governing body are declared to be public meetings open to the public at all times, except as provided by the Constitution of Tennessee." "Governing body" is defined in relevant part as:

> (E)(i) The board of directors of any association or nonprofit corporation authorized by the laws of Tennessee that:
> (a) Was established for the benefit of local government officials or counties, cities, towns or other local governments or as a municipal bond financing pool;
> (b) Receives dues, service fees or any other income from local government officials or such local governments that constitute at least thirty percent (30%) of its total annual income; and
> (c) Was authorized as of January 1, 1998, under state law to obtain coverage for its employees in the Tennessee consolidated retirement system.

> Sen. Crowe: Senator Haun, Ramsey and I, and I think Senator Gilbert concurs, felt that there are certain very small not-for-profit associations like our Tennessee County Services Association, the Highway Association, the County Commissioners and others, that would have two or less full-time staff members, these already submit budgets and audit to their board of elected officials who are primarily elected officials in the communities that they serve, and we felt they should be exempted from this subsection.

Therefore, these small nonprofit corporations and associations do not have to file another audit to be exempt from the Public Records Act and so are taken out of the coverage of the Act. *See* Tenn. G. Assemb., 100ᵗʰ G.A., 2d Sess. (1998), Senate (March 26, 1998, tape # S-34).

Based on a review of the statute as it relates to nonprofit corporations, a nonprofit corporation's records are not accessible to the public if:

> (1) the nonprofit corporation has more than two employees and files an annual audit pursuant to the statute, or

> (2) the nonprofit corporation has two or less employees.

There is a factual dispute in this case as to whether the Commission has one employee or two or more employees. But this is not a *material* factual dispute because the Commission's records are not open to the public under the statute regardless of the number of employees. If the Commission has only one employee, as it claims, the Act does not apply to it pursuant to Tenn. Code Ann. § 10-7-503(d)(1)(F)(iv). If the Commission has two or more employees, as Mr. Fodness claims, the Commission filed an audit and so is exempt from the Act. If the Commission had not filed an audit, then the number of its employees would be a material fact and summary judgment would not have been appropriate.

However, our inquiry does not end here. This is where we respectfully disagree with the trial court. It is our opinion that the Supreme Court's directive in *Memphis Publishing Co. v. Cherokee Children & Family Services, Inc.*, 87 S.W.3d 67 (Tenn.2002) requires us to go a step further and consider whether the Commission is the functional equivalent of an agency of the government pursuant to the guidelines set forth by our Supreme Court after the enactment of the Public Records Act.

In *Memphis Publishing Co.*, the Supreme Court was faced with the issue of whether a nonprofit corporation that provides privatized services to a government entity is subject to the public access requirements of the Public Records Act. The Court held as follows:

> Consequently, in light of our duty to construe the Tennessee Public Records Act liberally in favor of "the fullest possible public access to

public records," we follow the Connecticut Supreme Court and interpret records "made or received ... in connection with the transaction of official business by any governmental agency" to include those records in the hands of any private entity which operates as the functional equivalent of a governmental agency.

         \*                           \*                          \*

A private business does not open its records to public scrutiny merely by doing business with, or performing services on behalf of, state or municipal government. But when an entity assumes responsibility for providing public functions to such an extent that it becomes the functional equivalent of a governmental agency, the Tennessee Public Records Act guarantees that the entity is held accountable to the public for its performance of those functions.

*Memphis Publishing Co.*, 87 S.W.3d at 79 (footnotes omitted).

The Supreme Court adopted a "functional equivalency" test for determining when a private entity to which a government has delegated a public duty must make its records public. The Court further elaborated upon the contours of the functional equivalency test as follows:

The cornerstone of this analysis, of course, is whether and to what

extent the entity performs a governmental or public function, for we intend by our holding to ensure that a governmental agency cannot, intentionally or unintentionally, avoid its disclosure obligations under the Act by contractually delegating its responsibilities to a private entity. Beyond this consideration, additional factors relevant to the analysis include, but are not limited to, (1) the level of government funding of the entity; (2) the extent of government involvement with, regulation of, or control over the entity; and (3) whether the entity was created by an act of the legislature or previously determined by law to be open to public access.

*Memphis Publishing Co.*, 87 S.W.3d at 79.

The Supreme Court did not specifically refer to subsection (d) of the Public Records Act, presumably because the nonprofit corporation, Cherokee Children & Family Services, Inc., was not a nonprofit corporation as defined by Tenn. Code Ann. § 8-44-102(a), but, rather, based its decision on subsection (a) which refers to "[a]ll state, county and municipal records." However, we believe the Supreme Court intended the functional equivalency analysis to be applied to *any* nonprofit corporation or association seeking to keep its records closed.

We are persuaded that in light of our duty to construe the Tennessee Public Records Act liberally in favor of the fullest possible public access to public records and the guidance provided by our Supreme Court in *Memphis Publishing Co.,* that we must make the functional equivalency determination and, even though the nonprofit corporation has complied with the audit exception, its records are accessible to the public if it is the functional equivalent of a governmental agency. Its records will not be open to the public merely because it does business with or performs services on behalf of the Cocke County government or any municipal government. To hold otherwise would to allow a nonprofit corporation or association as defined by Tenn. Code Ann. § 8-44-102(b)(1)(E)(i) to file an audit, or if it has less than two employees not file an audit, and close its records to the public even though it is providing the functionally equivalent services of a government agency. We do not believe the Supreme Court intended such a result by its comments in *Memphis Publishing Co.* As the Supreme Court emphasized in that case, the Public Records Act "serves a crucial role in promoting accountability in government through public oversight of governmental activities." *Memphis Publishing Co.,* 87 S.W.3d at 74. Since this analysis is factually driven and there are not sufficient facts in the record for us to make this analysis, we must remand this case to the trial court for a determination of whether the services performed by the Commission are the functional equivalent of those performed by a government agency, utilizing the factors set forth in *Memphis Publishing Co.*.

The judgment of the trial court is vacated and this case is remanded for the trial court to apply the functional equivalency test in accordance with *Memphis Publishing Co. v. Cherokee Children & Family Services, Inc.* Costs on appeal are assessed to the Appellee, Newport and Cocke County Economic Development Commission.

_____
SHARON G. LEE, JUDGE