IN THE SUPREME COURT OF TENNESSEE
AT NASHVILLE
May 28, 2015 Session

**THE TENNESSEAN ET AL. v. METROPOLITAN GOVERNMENT OF NASHVILLE AND DAVIDSON COUNTY ET AL.**

**Appeal by Permission from the Court of Appeals, Middle Section
Chancery Court for Davidson County
No. 14156IV     Russell T. Perkins, Judge**

_____

**No. M2014-00524-SC-R11-CV – Filed March 17, 2016**
_____

GARY R. WADE, J., dissenting.

In the past, this Court has consistently refrained from creating public policy exceptions to the Tennessee Public Records Act (TPRA), Tenn. Code Ann. §§ 10-7-101 to -702 (2012 & Supp. 2014), because the authority to enact such exceptions rests solely with the General Assembly. See, e.g., Schneider v. City of Jackson, 226 S.W.3d 332, 344 (Tenn. 2007) ("[T]he General Assembly, not this Court, establishes the public policy of Tennessee."). Departing from this principle, the majority has concluded that Tennessee Rule of Criminal Procedure 16 exempts **all** police records from public disclosure during the course of a criminal prosecution. The plain language of the rule, however, protects from disclosure only work product and witness statements. Moreover, I believe that the victim of the alleged rape is entitled to an adjudication of her claim that public disclosure of the police records would violate her statutory and constitutional rights. I must, therefore, respectfully dissent.

### I. Facts and Procedural History

In August of 2013, four Vanderbilt football players were indicted on charges of aggravated rape. The indictments marked the beginning of a high-profile prosecution, which, following the grant of a new trial in June of 2015, remains ongoing.

After the indictments, a coalition of media organizations (the "Petitioners") made a public records request asking the Metropolitan Government of Nashville and Davidson County ("Metro") to disclose "[a]ny records . . . regarding the alleged rape," although they later modified the request to exclude any images or video recordings of the victim of the alleged rape. When Metro denied the request, the Petitioners sought judicial review in chancery court. After allowing the State and the victim of the alleged rape to intervene, the Chancellor reviewed the records *in camera* and held that some, but not all, were

exempt from disclosure pursuant to Tennessee Rule of Criminal Procedure 16(a)(2), which provides for the confidentiality of the work product of police, prosecutors, and other state agents. In particular, the Chancellor ruled as follows:

> [R]ecords submitted to [Metro Police] that were not developed internally and that do not constitute statements or other documents reflecting the reconstructive and investigative efforts of [Metro Police] are outside the expansive reach of [Tennessee Rule of Criminal Procedure] 16(a)(2). . . . [The Petitioners] are entitled to the text messages [sent by third parties to Metro Police], minus any photographic or videographic images. . . . The Court directs that these text messages be redacted to delete [the victim's] name or any of her identifying information. . . . [The Petitioners] are also entitled to inspect the Vanderbilt access card information, Pano-scan data[1] relating to Vanderbilt University premises, [and emails] recovered from potential witnesses and the criminal defendants which were not addressed to officials related to [Metro Police] or the District Attorney General's Office. All of the produced material has to have all videos and photos redacted from them, along with [the victim's] name and any other personal information about her . . . . All of the other materials will be preserved and not disclosed . . . .

The Chancellor declined to address a claim by the victim that public disclosure of the records would contravene her rights guaranteed by article I, section 35 of the Tennessee Constitution and by Tennessee Code Annotated section 40-38-102(a)(1) (2014) (commonly known as "the Victims' Bill of Rights"). Likewise, the Chancellor declined to address an argument by the State that the public disclosure of the records would impede a fair trial in the criminal action against those charged with the rape. The Chancellor determined that the court presiding over the criminal trial (the "Criminal Court") was better suited to resolve both of these issues.

A majority of a Court of Appeals panel reversed, holding that all of the requested materials were relevant to a pending or contemplated criminal action and were, therefore, protected from public disclosure by Rule 16(a)(2). Tennessean v. Metro. Gov't of Nashville & Davidson Cnty., No. M2014-00524-COA-R3-CV, 2014 WL 4923162, at *3 (Tenn. Ct. App. Sept. 30, 2014). Judge W. Neal McBrayer dissented, concluding that the ruling was "inconsistent with a fair reading of Rule 16(a)(2)" and that the Chancellor had properly applied Rule 16(a)(2). Id. at *4 (McBrayer, J., dissenting).

---

[1] "Pano-scan" is a type of panoramic photographic surveillance.

During the pendency of this appeal, first to the Court of Appeals and then to this Court, the prosecution has proceeded in the Criminal Court. As is relevant here, the Criminal Court issued a series of protective orders placing under seal all portions of the record containing images, video recordings, personal identifying information, medical records, and other confidential records of the victim and other witnesses. The Criminal Court also placed under seal all evidence introduced at the trial of two of the defendants. After the conclusion of the trial, the Criminal Court judge granted the two defendants a new trial based upon a finding of juror misconduct. The second trial has not yet taken place. Other defendants, not involved in the first proceeding, are to be tried separately.

## II. Analysis

The general rule under the TPRA is that any citizen is entitled to inspect the records of any governmental agency in the state. See Tenn. Code Ann. § 10-7-503(a)(2)(A)–(B). There are specific statutory exceptions to the general rule of public disclosure, see Tenn. Code Ann. § 10-7-504(a)–(r), none of which apply here. There is also a catch-all exception which provides that records are protected from disclosure as "otherwise provided by state law." Id. § 10-7-503(a)(2)(A). Based on this "state law" exception, records may be exempt from public disclosure as provided for in our state's constitution, our statutes, the common law, the rules of court, and administrative rules and regulations. Swift v. Campbell, 159 S.W.3d 565, 572 (Tenn. Ct. App. 2004).

In this instance, the determinative question is whether the records at issue are exempt from disclosure based upon the following provisions of state law: (1) Tennessee Rule of Criminal Procedure 16(a)(2)—which, as noted, provides for the confidentiality of investigative and prosecutorial work product; (2) Tennessee's statutes and constitutional provisions pertaining to victims' rights, see Tenn. Const. art. I, § 35 ("[V]ictims shall be entitled to . . . [t]he right to be free from intimidation, harassment and abuse throughout the criminal justice system."); Tenn. Code Ann. § 40-38-102(a)(1) ("All victims of crime . . . have the right to . . . [b]e treated with dignity and compassion[.]"); and (3) article I, section 9 of the Tennessee Constitution, which guarantees criminal defendants and the State the right to a fair trial by an impartial jury.

### A. Tennessee Rule of Criminal Procedure 16(a)(2)

Rule 16 defines the limits of discovery in criminal cases. Subsection (a)(1) identifies the information the State must disclose upon request by a defendant. Subsection (a)(2), which is at issue here, provides as follows:

> *Information Not Subject to Disclosure.* Except as provided in paragraphs (A), (B), (E), and (G) of subdivision (a)(1), this rule does not authorize the discovery or inspection of reports, memoranda, or other internal state

documents made by the district attorney general or other state agents or law enforcement officers in connection with investigating or prosecuting the case. Nor does this rule authorize discovery of statements made by state witnesses or prospective state witnesses.

This rule embodies the work product doctrine, which "is based on an attorney's right to conduct his or her client's case with a certain degree of privacy, preventing the discovery of materials prepared by opposing counsel in anticipation of litigation and protecting from disclosure an adversary's 'mental impressions, conclusions, and legal theories of the case.'" Wilson v. State, 367 S.W.3d 229, 235 (Tenn. 2012) (quoting Memphis Publ'g Co. v. City of Memphis, 871 S.W.2d 681, 689 (Tenn. 1994)); see also Swift, 159 S.W.3d at 572 ("The central purpose of the work product doctrine is to protect an attorney's preparation for trial under the adversary system.").

This Court first addressed Rule 16(a)(2) as a possible exception to the TPRA in Memphis Publishing Co. v. Holt, 710 S.W.2d 513 (Tenn. 1986). In that case, which involved a request for access to an investigative file pertaining to a shoot-out in Memphis, "the police investigation had been completed and the file closed, and . . . no proceedings relative to the 'incident' were pending in any criminal court, and none were contemplated." Id. This Court ruled that Rule 16(a)(2) did not protect the investigatory documents from public disclosure: "[The] limitation on access to records applies only to discovery in criminal cases. The investigative file sought to be examined . . . is a closed file, and is not relevant to any pending or contemplated criminal action. Rule 16, therefore, does not come into play . . . ." Id. at 517.

This Court again addressed Rule 16(a)(2) in the context of a TPRA petition in Appman v. Worthington, 746 S.W.2d 165, 165 (Tenn. 1987). Defense attorneys who represented inmates charged with the murder of another inmate filed the petition in an effort to gain access to the investigative file at the correctional facility where the murders had taken place. Id. While not challenging the classification of the records as investigative "work product," the defense attorneys contended that Rule 16(a)(2) should not serve as an exception to the duty to disclose under the TPRA. Citing Holt, this Court held that Rule 16(a)(2) applies as an exception to the obligation to disclose work product under the TPRA when "the files are open and are relevant to pending or contemplated criminal action." Id. at 166. Because the murder charges against the inmates were ongoing, the Court did not permit an inspection of the investigative work product. Id. at 167.

A similar issue arose in Schneider, 226 S.W.3d at 335. In that case, the petitioners sought "field interview cards generated by police officers" who had interviewed several

- 4 -

individuals, photographed them, and prepared "cards containing both the photographs and the officers' handwritten notes about the information obtained during the field interviews." Id. After declining to create a "law enforcement privilege," this Court remanded to the trial court for a determination of whether any of the field interview cards were protected by Rule 16(a)(2). Id. at 345-46. Notably, this Court observed that "[a]n entire field interview card should not be deemed exempt simply because it contains some exempt information," pointing out that a "redaction . . . is appropriate" when only a portion of the information in a record is protected. Id. at 346 (citing Eldridge v. Putnam Cnty., 86 S.W.3d 572, 574 (Tenn. Ct. App. 2001)).[2]

In summary, Holt, Appman, and Schneider have established Rule 16(a)(2) as an exception to disclose under the TPRA—but only when the records sought relate to a contemplated or ongoing criminal prosecution. Nothing in any of our prior rulings, however, supersedes the plain language of Rule 16(a)(2), which indicates that a record is protected only under one of the following conditions: (1) it qualifies as work product, defined as records "**made by** the district attorney general or other state agents or law enforcement officers in connection with investigating or prosecuting the case"; or (2) it consists of a "statement[] made by [a] state witness[] or prospective state witness[]." (Emphasis added.) In my view, the Chancellor correctly interpreted Rule 16(a)(2) by declining to exempt from disclosure those "records submitted to [Metro Police] that were not developed internally and that d[id] not constitute statements or other documents reflecting the reconstructive and investigative efforts of [Metro Police]." As indicated, this interpretation is not only consistent with the plain language of Rule 16(a)(2), but it is also consistent with the traditional parameters of the work product doctrine. Wilson, 367 S.W.3d at 235.

Notwithstanding the textual limitations of Rule 16(a)(2), the majority has broadly held that all records related to the criminal prosecution are exempt from disclosure. In particular, the majority has concluded that so long as a criminal action is pending, Rule 16 "limit[s] access to discovery materials to the State and the defendant" because "[t]here is no provision in Rule 16 for release of discovery materials to the public." In my view, the majority's conclusion rests upon a misinterpretation of Rule 16 and a failure to accord proper weight to the public nature of criminal proceedings. See U.S. Const. amend. VI ("In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial

---

[2] The concurrence emphasizes the Court's statement in Schneider that field interview cards related to ongoing criminal investigations "would clearly have been exempt from disclosure under Rule 16(a)(2)." Id. at 345. Notably, in Schneider, unlike in this case, all records at issue constituted police work product. In consequence, Schneider does not support a claim that all police records, including non-work product, are exempt from public disclosure under Rule 16(a)(2).

. . . ."); Tenn. Const. art. I, § 9 ("[I]n all criminal prosecutions, the accused hath the right to . . . a speedy public trial . . . .").

As noted, Tennessee Rule of Criminal Procedure 16(a)(2) exempts from discovery only work product and witness statements. The rule is silent as to the dissemination of discovery information to the public. According to our traditional canons of construction, "silence in a [rule] is not affirmative law" and is "ordinarily irrelevant to the interpretation of [the rule]." State v. Collier, 411 S.W.3d 886, 897 (Tenn. 2013) (quoting House v. Estate of Edmondson, 245 S.W.3d 372, 387 (Tenn. 2008)); see also Harrison v. PPG Indus., Inc., 446 U.S. 578, 592 (1980) ("In ascertaining the meaning of a [rule], a court cannot, in the manner of Sherlock Holmes, pursue the theory of the dog that did not bark."). Because Rule 16(a)(2) does not address whether discovery material may be disseminated to the public, the central premise of the majority's holding—that the rule prohibits the public disclosure of discovery materials—is flawed.[3]

Moreover, the majority relies upon the canon of construction that "the more specific of two **conflicting** statutory provisions controls." (Emphasis added.) That canon should not apply in this instance because, as indicated, the TPRA requires public access unless "otherwise provided by state law," and Rule 16 does not prohibit public access to discoverable materials. Thus, the two provisions in question—the TPRA and Rule 16— are simply not in conflict.

The majority further indicates that interpreting Rule 16 as allowing public access under these circumstances "would have profound adverse consequences for the criminal justice system." Although this is a valid policy concern, our previous holdings preclude courts from creating public policy exceptions to the TPRA—a prerogative within the exclusive authority of the General Assembly. See, e.g., Schneider, 226 S.W.3d at 344. "[U]nless an exception [to the TPRA] is established, we must require disclosure 'even in the face of serious countervailing considerations.'" Id. at 340 (quoting City of Memphis, 871 S.W.2d at 684). While I understand my colleagues' desire to "protect[] the integrity of the criminal justice system," that policy objective does not justify deviating from the plain language of the rule. See Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 9-10 (2012) (emphasizing that judges should remain faithful to the plain meaning of texts to avoid reading their own values into rules and statutes).

---

[3] A separate provision of Rule 16 authorizes the trial court to issue protective orders placing discoverable materials under seal when necessary to ensure a fair trial, to protect the rights of the victim, or to safeguard other legally cognizable interests. See Tenn. R. Crim. P. 16(d); Huskey, 982 S.W.2d at 362. The records included in the Criminal Court's protective orders are, of course, exempt from disclosure. See Huskey, 982 S.W.2d at 362.

In summary, the Chancellor properly interpreted Rule 16(a)(2) by holding that it applies only to records that either contain witness statements or qualify as state work product. The ruling of the Chancellor should be affirmed.

## B. Victims' Rights

The victim has intervened in this action to assert her statutory and constitutional protections against disclosure under the TPRA. As the victim of a crime, she entitled to "[b]e treated with dignity and compassion," Tenn. Code Ann. § 40-38-102(a)(1), and "to be free from intimidation, harassment and abuse throughout the criminal justice system," Tenn. Const. art. I, § 35. The victim contends that these rights provide a basis for exempting records from disclosure under the "state law" exception of the TPRA.

In light of its holding that Rule 16 exempts the requested records from disclosure for the time being, the majority has not addressed this issue. In my assessment, the victim's claim warrants consideration regardless of whether the records are temporarily exempt from disclosure pursuant to the rule. Both article I, section 35 and section 40-38-102(a)(1), which are designed to insure protections to victims, qualify as "state law" for purposes of the catch-all exception to disclosure under the TPRA. See Swift, 159 S.W.3d at 571-72. Exceptions must be recognized pursuant to the catch-all provision when, as here, there is a significant risk that the disclosure of documents will contravene rights guaranteed by provisions in the Tennessee Code and the Tennessee Constitution. See id.

Furthermore, the constitutional and statutory rights afforded to victims are broader in scope than the work-product exception of Rule 16(a)(2). When the criminal prosecution concludes, the protections of Rule 16 expire. At that point, absent any other exception, the public records pertaining to the rape will be subject to public disclosure, including data from the victim's cell phone and video recordings of the alleged rape. In contrast, the victim's statutory and constitutional rights remain in effect after the prosecutions come to an end. In my view, the victim deserves an adjudication of her rights.

The majority attempts to dispel these concerns by pointing to Tennessee Code Annotated section 10-7-504(q)(1), an exception within the TPRA which provides as follows:

> Where a defendant has plead guilty to, or has been convicted of, and has been sentenced for a sexual offense or violent sexual offense specified in § 40-39-202, the following information regarding the victim of the offense shall be treated as confidential and shall not be open for inspection by members of the public:

(A) Name, unless waived pursuant to subdivision (q)(2);
(B) Home, work and electronic mail addresses;
(C) Telephone numbers;
(D) Social security number; and
(E) Any photographic or video depiction of the victim.

The majority indicates that this provision will protect the victim following the conclusion of the criminal action such that she will not be required to assert her constitutional and statutory rights. I am not convinced. First, this provision applies only if the defendants either plead guilty or are convicted at trial. Second, the materials exempt from disclosure are limited. For example, the statute would not protect statements by or about the victim; written descriptions of photographs and videos of the victim; or most content of the victim's cell phone. These materials qualify for protection under the victims' rights provisions—which, as indicated, apply both during and after the prosecution.

Under these circumstances, I would remand the matter to the Chancellor for an adjudication of the victim's claims of protection.

### C. Right to a Fair Trial

The final issue is whether the disclosure of any of the requested records would infringe upon the right to a fair trial in a criminal proceeding, as guaranteed by article I, section 9 of the Tennessee Constitution. Of course, there are instances when the right to public disclosure must give way to the right to a fair trial. Here, however, the Criminal Court balanced these interests in the formulation of its protective orders. Protective orders characteristically strike a balance between the public's right to access and the right of an accused to a fair trial. See Gannett Co. v. DePasquale, 443 U.S. 368, 398 (1979); Huskey, 982 S.W.2d at 363. Nothing in the record suggests that the Criminal Court's protective orders are inadequate in this regard. Under these circumstances, the right to a fair trial is adequately protected.

### III. Conclusion

In summary, because I disagree with the majority's interpretation of Rule 16(a)(2) and the majority's failure to address the claim asserted by the victim, I respectfully dissent. I would affirm the Chancellor's ruling as to Rule 16(a)(2) and remand the case for the Chancellor to consider the merits of the victim's claim.

_____

GARY R. WADE, JUSTICE