IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
December 13, 2016 Session

## HERBERT S. MONCIER v. NINA HARRIS, ET AL.

**Appeal from the Chancery Court for Knox County**
**No. 190527-2     Clarence E. Pridemore, Jr., Chancellor**

_____

## No. E2016-00209-COA-R3-CV

_____

This appeal involves a request for access to examine records under Tennessee Code Annotated section 10-7-505, in which the plaintiff sought the release of civil forfeiture documents from the Tennessee Department of Safety and Homeland Security. The trial court held that the plaintiff did not show sufficient cause for release of the sought-after documents in a non-redacted format. Upon our previous review, we found the issue to be moot owing to the legislative enactment of 2016 Tenn. Pub. Acts, chapter 722, § 5. Upon the plaintiff's appeal, the Supreme Court remanded the case for our reconsideration in light of the legislative enactment of 2017 Tenn. Pub. Acts, chapter 113, § 1, which amended the Tennessee Public Records Act. Upon our review, we affirm the judgment of trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed; Case Remanded**

JOHN W. MCCLARTY, J., delivered the opinion of the court, in which CHARLES D. SUSANO, JR., J., and D. MICHAEL SWINEY, C.J., joined.

Herbert S. Moncier, Knoxville, Tennessee, appellant pro se.

Herbert H. Slatery, III, Attorney General & Reporter, Andree S. Blumstein, Solicitor General, and Janet M. Kleinfelter, Deputy Attorney General, Nashville, Tennessee, for the appellees, Nina Harris, Joseph Bartlett, and William Gibbons.

### OPINION

### I. BACKGROUND

On July 20, 2015, Herbert S. Moncier ("Attorney") filed an official request with the Tennessee Department of Safety and Homeland Security ("TDOSHS"), requesting to inspect

each case file for which a forfeiture warrant had been received by the Knoxville office of the department's Legal Division since January 1, 2015. The purpose of Attorney's request was to solicit prospective clients.

Civil forfeiture proceedings in this state are governed by the provisions contained in Tennessee Code Annotated sections 40-33-201 to -215. The seizing officer is required to prepare and deliver a receipt titled "notice of seizure" to the person found in possession of the property that is seized. The notice of seizure contains the following information:

> (1) A general description of the property seized and, if the property is money, the amount seized;
>
> (2) The date the property was seized and the date the notice of seizure was given to the person in possession of the seized property;
>
> (3) The vehicle identification number (VIN) if the property seized is a motor vehicle;
>
> (4) The reason the seizing officer believes the property is subject to seizure and forfeiture;
>
> (5) The procedure by which recovery of the property may be sought, including any time periods during which a claim for recovery must be submitted; and
>
> (6) The consequences that will attach if no claim for recovery is filed within the applicable time period.

Tenn. Code Ann. § 40-33-203. The address of the person whose property is seized is also included.

The seizing officer must apply for a forfeiture warrant within five working days following the seizure. Upon issuance of a forfeiture warrant, the officer is required to send the warrant, a copy of the affidavit in support of the warrant, and a copy of the notice of seizure within seven business days to the applicable agency. Tenn. Code Ann. §40-33-204. The statute provides that the "seizing agency shall maintain a copy of the notice of seizure for all property seized . . . *and the notices and receipts shall be public records*." *Id.* (emphasis added). Any person asserting a claim to property seized pursuant to the civil forfeiture provisions may file, within thirty days of being notified that a forfeiture warrant has issued, a written claim with TDOSHS relating the person's interest in the seized property and requesting a hearing. Tenn. Code Ann. § 40-33-206(a).

Attorney's record request was submitted under Tennessee Code Annotated section 10-7-503, Tennessee's Public Records Act ("TPRA"). TPRA "has a noble and worthwhile purpose by providing a tool to hold government officials and agencies accountable to the citizens of Tennessee through oversight in government activities." *Tennessean v. Metro Gov't of Nashville*, 485 S.W.3d 857, 864 (Tenn. 2016). To facilitate access to records, TPRA requires that:

> [A]ll state, county and municipal records shall, at all times during business hours . . . be open for personal inspection by any citizen of this state, and those in charge of the records shall not refuse such right of inspection to any citizen, **unless otherwise provided by state law**.

Tenn. Code Ann. § 10-7-503(a)(2)(A) (emphasis added). Attorney observes that Tennessee Code Annotated section 40-33-204(g) holds that notices of seizures are public records.[1]

The Tennessee Supreme Court has characterized TPRA as "an all encompassing legislative attempt to cover all printed matter created or received by government in its official capacity." *Griffin v. City of Knoxville*, 821 S.W.2d 921, 923 (Tenn. 1991) (citing *Bd. of Educ. V. Memphis Publ'g Co.*, 585 S.W.2d 629, 631 (Tenn. Ct. App. 1979)). TPRA requires the courts to construe the statute broadly "so as to give the fullest possible public access to public records." Tenn. Code Ann. § 10-7-505(d). As noted by our Supreme Court: "There is a presumption of openness for government records. Custodians of the records are directed to promptly provide for inspection any public record not exempt from disclosure." *Tennessean*, 485 S.W.3d at 864 (citations omitted).

TDOSHS informed Attorney that there were approximately 1,790 files responsive to his request and that the records would be provided to him in installments. On August 10, 2015, the first installment was made available. The following day, Attorney reviewed the first set of 50 files. Six days later, Attorney expanded his prior records request to include case management sheets maintained by TDOSHS for each file. The department informed Attorney that the case management sheets had been included in the first installment of records and would continue to be provided in all future installments. TDOSHS explained to Attorney that pursuant to both the Tennessee Uniform Motor Vehicle Record Disclosure Act ("UMVRDA"), codified at Tennessee Code Annotated sections 55-25-101 to -112, and the federal Driver Privacy Protection Act ("DPPA"), 18 United States Code sections 2721 to 2725, it was required to redact personal information, such as addresses, obtained from motor vehicle records. A "motor vehicle record" means any records that pertain to a motor vehicle operator's or driver's license or permit, motor vehicle registration, motor vehicle title, or identification document issued by a Department of Motor Vehicles ("DMV"), or other state or local agency authorized to issue any of such forms of credentials." 1996 Tenn. Pub. Acts, ch. 745, §3(d), H.B. No. 2622. "Personal information" means information that identifies a person, including address and telephone number. Tenn. Code Ann. § 55-25-103(7). Specifically, pursuant to Tennessee Code Annotated section 55-25-104, TDOSHS, and "any officer, employee, agent or contractor thereof, shall not disclose personal information about any person obtained "in connection with a motor vehicle record."

---

[1]He asserts that the trial court's ruling addressed only forfeiture warrants.

Accordingly, any addresses of persons that had been obtained from or in connection with a motor vehicle record were confidential and were redacted from the documents provided for Attorney's inspection. TDOSHS asserts that its redaction of personal information, including addresses, from notices of seizure, affidavits, and warrants received by its Legal Division was consistent with TDOSHS's practice and had been previously communicated to Attorney in 2011.

TPRA allows a person whose request for public records is denied to file suit and seek judicial review of the governmental entity's denial. Tenn. Code Ann. § 10-7-505(b). On October 23, 2015, Attorney filed a "Complaint for Access to Examine Records" against Bill Gibbons, the Commissioner of TDOSHS, as well as Joseph Bartlett, the Supervisor of TDOSHS's Legal Division-Eastern Section, along with Nina Harris, Staff Attorney ("Staff Attorney"). In the complaint, Attorney alleged that Tennessee Code Annotated section 55-25-104 violated article I, section 19[2] and article XI, section 16[3] of the Tennessee Constitution and, therefore, could not be relied upon in redacting personal information from the records in question. Attorney further asserted that TDOSHS's redaction of personal addresses was nothing but a pretext for denying him access to public records under Tennessee Code Annotated section 10-7-503(a)(2)(A). Shortly thereafter, the trial court ordered TDOSHS to a hearing set for November 17, 2015, to show cause why Attorney's petition should not be granted.

Attorney subsequently issued a subpoena to Staff Attorney to produce documents and appear at the show cause hearing. The subpoena, which does not appear in the record, purportedly sought production of a number of documents from TDOSHS, including internal manuals, memoranda, and operating procedures, as well as any and all communications with all persons concerning Attorney's records request, along with the boxes of the redacted records that had been produced for inspection on August 11, 2015. Staff Attorney filed a motion to quash the subpoena, arguing that the discovery rules set forth in the Tennessee Rules of Civil Procedure are not applicable to show cause hearings pursuant to Tennessee Code Annotated section 10-7-505, and that the procedure for judicial review provided for in the statute does not authorize a plaintiff to conduct document discovery or subpoena witnesses for the show cause hearing. TDOSHS's response asserted, inter alia, that (1) the redactions were mandated by the UMVRDA, the DPPA, and by relevant state and Supreme Court precedent; and (2) that neither the UMVRDA nor the DPPA violates the Tennessee Constitution because the right to access public records is not a constitutional right and may be limited by the Legislature. Staff Attorney did not appear at

---

[2]Sec. 19. Freedom of speech and press. That the printing presses shall be free to every person to examine the proceedings of the Legislature; or of any branch or officer of the government, and no law shall ever be made to restrain the right thereof . . . .

[3]Sec. 16. Bill of rights to remain inviolate. The declaration of rights hereto prefixed is declared to be a part of the constitution of this state, and shall never be violated on any pretence whatever. And to guard against transgression of the high powers we have delegated, we declare that everything in the bill of rights contained, is excepted out of the general powers of government, and shall forever remain inviolate.

the hearing, which proceeded on proffers made by Attorney and TDOSHS. At the conclusion of the hearing, the court granted Staff Attorney's motion to quash.

On November 30, 2015, subsequent to the hearing, Attorney filed a motion for leave to amend his petition to conform it "to information proffered to the Court by the parties." On December 7, 2015, he filed two declarations in "Opposition to Respondents' Proposed Findings of Fact and Conclusions of Law," in which, according to the defendants, Attorney sought to present evidence that he had not presented at the show cause hearing. The following week, Attorney filed "Supplemental Pleadings For Proposed Findings of Fact and Conclusions of Law," which, according to the defendants, again sought to present evidence that Attorney had not presented at the hearing and served to supplement his petition. The defendants responded that they had no objection to the amendment of the petition to conform the issues pled to the evidence presented at the hearing. However, they otherwise objected to Attorney's motion.

On January 15, 2016, the trial court denied the motion to amend. Twelve days later, the court ruled that the defendants had met their burden of showing cause for not releasing the redacted information "in that there is no discernible way to determine if any of the addresses were or were not obtained from the Motor Vehicle Database" and the release of such information would be in violation of the UMVRDA and the federal DPPA. The court found that because the right to inspect records under the TPRA was a statutorily created right, the Legislature could limit that right and that such limitation would not violate article I, section 19 of the Tennessee Constitution. Accordingly, the trial court dismissed Attorney's petition in its entirety and with prejudice.

Attorney timely filed this appeal.

## II. ISSUES

We have consolidated the issues on appeal as follows:

> 1. Whether the trial court correctly held that the UMVRDA does not violate article I, section 19 of the Tennessee Constitution?

> 2. Whether the trial court properly ruled regarding Attorney's record request?

> 3. Whether the trial court abused its discretion in granting Staff Attorney's motion to quash Attorney's subpoena and in denying Attorney's post-hearing motion for leave to amend his petition?

## III. STANDARD OF REVIEW

The trial court's findings of fact were based on documentary evidence, consisting of the parties' declarations and exhibits. In the absence of live witness testimony, an appellate court is able to assess credibility and weigh the evidence as well as the trial court. *Kelly v. Kelly*, 445 S.W.3d 685, 693 (Tenn. 2014). As a result, the trial court's findings of fact are not entitled to a presumption of correctness. *Id.*; cf. Tenn. R. App. P. 13(d) (appellate courts normally accord trial court's findings of fact a presumption of correctness unless record preponderates otherwise).

When interpreting statutes, we must determine and give effect to the Legislature's intent in adopting the statute without adding or taking away from its intended meaning or application. *Perrin v. Gaylord Entm't Co.*, 120 S.W.3d 823, 826 (Tenn. 2003) (citing *Parks v. Tenn. Mun. League Risk Mgmt. Pool*, 974 S.W.2d 677, 679 (Tenn. 1998)). The trial court's interpretation of TPRA and other statutes involves questions of law, which we review de novo, with no presumption of correctness afforded to the trial court's conclusions. *Mansell v. Bridgestone Firestone N. Am. Tire, LLC*, 417 S.W.3d 393, 399 (Tenn. 2013).

Attorney also appeals the trial court's quashing of his subpoena to Staff Attorney and the denial of his motion for leave to file an amended complaint. "The decision of the trial court in discovery matters will not be reversed on appeal unless a clear abuse of discretion is demonstrated." *Artist Building Partners v. Auto-Owners Mut. Ins. Co.*, 435 S.W.3d 202, 220 (Tenn. Ct. App. 2013) (quoting *Benton v. Snyder*, 825 S.W.2d 409, 416 (Tenn. 1992)). This court must examine whether the trial court "(1) applie[d] an incorrect legal standard, (2) reache[d] an illogical or unreasonable decision, or (3) base[d] its decision on a clearly erroneous assessment of the evidence." *State v. Mangrum*, 403 S.W.3d 152, 166 (Tenn. 2013). Similarly, the denial of a motion to amend the pleadings lies within the trial court's sound discretion and will not be reversed absent a showing of abuse of discretion. *Pratcher v. Methodist Healthcare Memphis Hosps.*, 407 S.W.3d 727, 741 (Tenn. 2013).

## IV. DISCUSSION

### A.

After the trial court entered its judgment, the Legislature enacted Public Chapter 722, which became effective on July 1, 2016. Among other things, that act contained a new exception to TPRA, codified as Tennessee Code Annotated section 10-7-504(a)(28), which provided in pertinent part as follows:

> (A) No governmental entity shall publicly disclose personally identifying information of any citizen of the state unless:
>
> (i) Permission is given by the citizen;

(ii) Distribution is authorized under state and federal law; or

(iii) Distribution is made:

> (a) To a consumer credit reporting agency as defined by the federal Fair Credit Report Act (15 U.S.C. §§ 1681, et seq.);
>
> (b) To a financial institution subject to the privacy provisions of the federal Gramm Leach Bliley Act (15 U.S.C. § 6802); or
>
> (c) To a financial institution subject to the International Money Laundering Abatement and Financial Anti-Terrorism Act of 2001 (31 U.S. §§ 5311, et seq.).

. . .

(C) For purposes of this subdivision (28), "personally identifying information" means:

> (i) Social security numbers;
>
> (ii) Official state or government issued driver licenses or identification numbers;
>
> (iii) Alien registration numbers or passport numbers;
>
> (iv) Employer or taxpayer identification numbers;
>
> (v) Unique biometric data, such as fingerprints, voice prints, retina or iris images, or other unique physical representations; or
>
> (vi) Unique electronic identification numbers, ***addresses***, routing codes, or other personal identifying data which enables an individual to obtain merchandise or service or to otherwise financially encumber the legitimate possessor of the identifying data.

2016 Tenn. Pub. Acts, ch. 722, § 5 (emphasis added). Pursuant to this statutory provision, "addresses . . . or other personal identifying data" were confidential and not subject to disclosure

under TPRA, regardless of whether the address was obtained from or in connection with a motor vehicle record or from another source.

In 2017, however, the Legislature amended 10-7-504(a)(29)(C)(vi) to delete "addresses" from the definition of "personally identifying information." As the Tennessee General Assembly has now declared that, as a matter of public policy, addresses of citizens contained in governmental records are subject to disclosure under TPRA, we must address whether the trial court properly ruled that the federal DPPA and the state UMVRDA provide an exception to TPRA and that the defendants were justified in redacting the addresses from the requested records in compliance with these two laws.

**B.**

Despite the fact that TPRA is to be construed broadly in favor of access to public records, a person does not have a constitutional right to examine such records. *Abernathy v. Whitley*, 838 S.W.2d 211, 214 (Tenn. Ct. App. 1992). It is within the power of the Legislature to create, limit, or abolish rights of access to public records. *Id.; see also Friedmann v. Corrections Corp. of America*, 310 S.W.3d 366, 378 (Tenn. Ct. App. 2009) ("[T]he General Assembly has reserved to itself the right to exempt documents from the coverage of the Public Records Act."). The exceptions to TPRA recognized by state law reflect the Legislature's judgment that "the reasons not to disclose a record outweigh the policy favoring disclosure." *Allen v. Day*, 213 S.W.3d 244, 261 (Tenn. Ct. App. 2006) (quoting *Swift v. Campbell*, 159 S.W.3d 565, 571 (Tenn. Ct. App. 204)). These exceptions "are not subsumed by the admonition to interpret the Act broadly;" accordingly, "courts are not free to apply a 'broad' interpretation that disregards specific statutory language" setting forth such exceptions. *Id.*

The trial court, relying on *Abernathy*, correctly ruled that the limitation on the right to access contained in the UMVRDA did not violate the Tennessee Constitution. The decision in *Abernathy,* in which the court was addressing a facial as well as an as-applied challenge, reviewed the issue whether a statutorily created exception to TPRA for a state agency's reports violated article I, section 19 of the Tennessee Constitution:

> Plaintiff's first issue is: Whether Tennessee Code Annotated § 10-7-504(a)(2), which exempts investigative records of the Tennessee Bureau of Investigation from disclosure and inspection pursuant to the Public Records Act, constitutes a prohibited restraint upon the right of every person to examine the proceedings of any branch or office of the government contrary to Article I, § 19 of the Constitution of the State of Tennessee or is contrary to the "Law of the Land" clause of Article I, § 8 thereof.

*Id.* at 212. We rejected this argument, noting that there is no constitutional right to examine public records. Rather, the right has been conferred on all members of the public by statute enacted by the Legislature, and that body "has the power to create, limit or abolish a right which is not conferred by the Constitution." *Id.* at 214. Other state appellate decisions affirm the holding in *Abernathy* that there is no constitutional right of access to public records under either the federal or the state constitutions. *See State ex rel. Johnson v. Gwyn*, No. M2013-02640-COA-R3-CV, 2015 WL 7061327, at *6-8 (Tenn. Ct. App. Nov. 10, 2015); *see also State v. Cobbins*, No. E2013-02726-CCA-WR-CO, slip op. at 13-19 (Tenn. Crim. App. Feb. 4, 2015) (quoted in relevant part in *Johnson*).

In *Mayhew v. Wilder*, 46 S.W.3d 760 (Tenn. Ct. App. 2001), the plaintiffs argued that the specific right preserved in article I, section 19 required that all sessions of the Legislature be open to the public. This court rejected such a broad interpretation:

> The right preserved in Article I, Section 19 is the right of the people to use *the printing press* to examine the proceedings of the Legislature or *any other branch of government*. If the section means that legislative sessions have to be open to the press, then cabinet meetings and Supreme Court conferences would also be open. We know of no authority for that position.
>
> Article IX, Section 7 of the 1790 Pennsylvania Constitution contains language nearly identical to that contained in Article I, Section 19 of our Constitution. None of the cases interpreting the Pennsylvania Constitution suggests that it required open meetings of the Legislature. More specifically, the cases suggest that the section was a guarantee of free speech and the right to write or print on any subject. In *Respublica v. Joseph Dennie*, 4 Yeates 267 (Pa. 1805), the Pennsylvania Supreme Court made this comment about the meaning of Article IX, Section 7:
>
> "Thus it is evident, that legislative acts, or of any branch of the government, are open to public discussion; and every citizen may freely speak, write or print on any subject, but is accountable for the abuse of that privilege. There shall be no licenses of the press. Publish as you please in the first instance without control; but you are answerable both to the community and the individual, if you proceed to unwarrantable lengths."
>
> *We are confident that Article I, Section 19 of our Constitution restricts prior restraints on the publication and dissemination of*

*materials critical of governmental actions. It does not provide a right of access to all legislative meetings.*

*Id.* at 772 (emphasis added concluding paragraph). Thus, as properly argued by the defendants, article I, section 19 does not provide for an unrestricted right of access by the public to examine the proceedings of the Legislature or of any other branch of government. The trial court correctly ruled that redaction of the addresses from the requested records pursuant to the UMVRDA did not violate article I, section 19 of the Constitution of the State of Tennessee.

**C.**

The federal DPPA, 18 U.S.C. §§ 2721 to 2725, prohibits a state from disclosing personal information (including a person's address) obtained in connection with a motor vehicle record. *See* 18 U.S.C. §§ 2721(a)(1); 2725(3).[4] The DPPA was enacted in 1994 to "limit the release of an individual's personal information contained in his [or her] driver's license record to those who had a legitimate and lawful need for the information." *Kehoe v. Fidelity Fed. Bank &* Trust, 421 F.3d 1209, 1210 (11th Cir. 2005). Congress also found that many states were selling personal information collected to individuals and businesses. *See, e.g.,* 139 Cong. Rec. 29466, 29469 (1993); 140 Cong. Rec. 7929 (1994) (remarks of Rep. Goss). As explained by the United States Supreme Court:

> The DPPA establishes a regulatory scheme that restricts the States' ability to disclose a driver's personal information without the driver's consent. The DPPA generally prohibits any state DMV, or officer, employee, or contractor thereof, from "knowingly disclos[ing] or otherwise mak[ing] available to any person or entity personal information about any individual obtained by the department in connection with a motor vehicle record." 18 U.S.C. § 2721(a). The DPPA defines "personal information" as any information "that identifies an individual, including an individual's photograph, social security number, driver identification number, name, address (but not the 5-digit zip code), telephone number, and medical disability information," but not including "information on vehicular accidents, driving violations, and driver's status." § 2725(3). A "motor vehicle record" is defined as "any record that pertains to a motor vehicle operator's permit, motor vehicle title,

---

[4]The primary purpose of the DPPA was to prevent stalkers, harassers, would-be criminals, and other unauthorized individuals from obtaining and using personal information from motor vehicle records. *See, e.g.,* 140 Cong. Rec. H2518-01, H2527 (1994) (statement of Rep. Goss).

motor vehicle registration, or identification card issued by a department of motor vehicles." § 2725(1).

*Reno v. Condon*, 528 U.S. 141 (2000).

In order to implement the federal DPPA in Tennessee, our Legislature enacted the UMVRDA in 1996 "to protect the interest of individuals in their personal privacy" by "prohibiting the disclosure and use of personal information contained in their motor vehicle records." Tenn. Code Ann. § 55-25-102. One provision of TPRA, Tennessee Code Annotated section 10-7-504(a)(12), specifically provides that "[p]ersonal information contained in motor vehicle records shall be treated as confidential and shall only be open for inspection in accordance with title 55, chapter 25."

The UMVRDA contains a broad prohibition against the disclosure of personal information obtained by TDOSHS in connection with a motor vehicle record:

> Notwithstanding any other law to the contrary, except as provided in §§ 55-25-105 – 55-25-107, [TDOSHS] and any officer, employee, agent or contractor thereof, shall not disclose personal information about any person obtained by [TDOSHS] in connection with a motor vehicle record.

Tenn. Code Ann. § 55-25-104. Pursuant to the statute, "Personal information means information that identifies a person, including . . . driver identification number, name, address . . . [or] telephone number. . . ." It does not include "information on vehicular accidents, driving or equipment-related violations, and driver license or registration status." Tenn. Code Ann. § 55-25-103(8); *see also* 18 U.S.C. § 2725(3). The term "motor vehicle record" is defined as "any records that pertain to a motor vehicle operator's or driver license or permit, motor vehicle registration, motor vehicle title, or identification document issued by a department of safety, or other state or local agency authorized to issue any of these forms of credentials." Tenn. Code Ann. § 55-25-103(6). This definition is virtually identical to the definition of "motor vehicle record" under the DPPA: "any record that pertains to a motor vehicle operator's permit, motor vehicle title, motor vehicle registration, or identification card issued by a department of motor vehicles." 18 U.S.C. § U.S>C. § 2725(1). Accordingly, pursuant to this definition, a driver's license, permit identification card, motor vehicle title, and motor vehicle registration all constitute a "motor vehicle record" for purposes of the UMVRDA. *See Pavone v. Law Offices of Anthony Mancini, Ltd.*, 118 F.Supp.3d 1004, 1007 (N.D. Ill. 2015); *Margan v. Niles*, 250 F. Supp.2d 63, 70 (N.D.N.Y. 2003).

In addition to the prohibition in Tennessee Code Annotated section 55-25-104, the UMVRDA provides that TDOSHS, or any officer, employee, or contractor thereof, "shall not knowingly disclose or otherwise make available to any person or entity . . . [p]ersonal

information about any individual obtained by TDOSHS in connection with a motor vehicle record, except as provided in this section." Tenn. Code Ann. § 55-25-107(a). *See* 18 U.S.C. § 2721(a). Both § 107(b) of the state law and § 2721(b) of the federal law identify fourteen "permissible uses" for which disclosure is allowed, but responding to a public records request is not one of them. Thus, both state and federal law require that personal information, such as an address, obtained from or in connection with a motor vehicle record be kept confidential in responding to a request for records under TPRA.

As noted by the defendants, TDOSHS handles approximately 10,000 seizure cases per year from more than 600 law enforcement agencies across the state. Because of this high volume of cases and number of law enforcement agencies involved, TDOSHS does not know, and has no way of confirming, whether personal information contained in the seizure records was obtained from unprotected source materials, i.e., a source other than a motor vehicle record or a protected database. Consequently, in order to ensure that personal information is protected, as required by the UMVRDA and the DPPA, TDOSHS redacted the addresses from the records Attorney requested. Based on the record before us, and in light of the clearly expressed public policy set forth in both the UMVRDA and section 10-7-504(a)(12) of TPRA, we find that the trial court properly concluded that the defendants had met their burden in establishing that redaction of the addresses from the requested records was required under the UMVRDA and DPPA.

**D.**

Attorney argues that because Tennessee Code Annotated section 40-33-204(g) declares that notices of seizures are public records, such statute is dispositive of this appeal. Contrary to Attorney's argument, however, simply because the Legislature has declared that the "notices and receipts" are public records does not mean that information in those records that is confidential cannot be redacted from the records before producing them in response to a public records request.

Attorney further asserts that the UMVRDA and the DPPA prohibit only a "knowing disclosure." He contends that since TDOSHS cannot confirm that personal information contained in all of the seizure records was obtained from or in connection with a motor vehicle record, there cannot be any "knowing" disclosure by the department. He therefore argues that neither the UMVRDA nor the DPPA would prohibit disclosure of the addresses in the records at issue.

Admittedly, neither act defines what constitutes a "knowing disclosure" for purposes of the prohibition contained in Tennessee Code Annotated section 55-25-107(a)(1) and 18 U.S.C. § 2721(a). However, in *Enslin v. The Coca-Cola Company*, 136 F.Supp.3d 654, 2015 WL

5729241 (E.D. Pa. 2015), the court stated that a "knowing disclosure" of personal information for purposes of the civil liability provisions contained in § 2724 of the DPPA[5]

> requires the defendant to take some "voluntary action" to disclose the information. This requirement does not mean, however, that the disclosing party knows that the disclosure is potentially illegal, nor must third parties actually see the disclosed information for the disclosure to constitute a violation.

2015 WL 5729241, at *11 (internal citations omitted). *Pichler v. UNITE*, 542 F.3d 380, 396-97 (3d. Cir. 2008) (finding liability for any voluntary action, not knowledge of illegality or potential consequences). In contrast, in *Roth v. Guzman*, 650 F.3d 603 (6th Cir. 2011), the Sixth Circuit held that a state department of motor vehicles was not subject to civil liability under the DPPA for the disclosure of personal information unless it actually knew that the recipient, who had represented that it had a permissible use for the requested DPPA-protected personal information, would use it for an improper purpose." *Id.* at 611-12. Under the facts before us, TDOSHS's disclosure of the addresses from the requested records would constitute a "knowing disclosure" under either construction. Clearly, based on Attorney's representations, TDOSHS knows that he intends to use the addresses in the requested records for a purpose not permitted under either Act.[6]

> Both the UMVRDA and the DPPA provide that information may be disclosed:

> For use in connection with any civil, criminal, administrative, or arbitral proceeding in a Federal, State, or local court or agency or before any self-regulatory body, including the service of process, investigation in anticipation of litigation, and the execution or enforcement of judgments and orders, or pursuant to an order of a Federal, State, or local court.

Tenn. Code Ann. § 55-25-107(b)(4); *see* 18 U.S.C. § 2721(b)(4). In *Maracich v. Spears*, 133 S.Ct. 2191 (2013), the United States Supreme Court rejected the argument that the solicitation of

---

[5]Section 2724(a) provides for a private cause of action against a defendant who "knowingly obtains, discloses, or uses personal information from a motor vehicle record and for a purpose not permitted." Subsection (b) authorizes actual damages in an amount of not less than $2,500, punitive damages upon proof of willful or reckless disregard of the law, costs and attorney's fees and such other preliminary and equitable relief as appropriate.

[6]The UMVRDA provides that personal information obtained from motor vehicle records shall be disclosed only "upon proof of the identity of the person requesting the record or information and representation by that person that the use of the personal information shall be strictly limited to one (1) or more of the permitted uses described in this section." Tenn. Code Ann. § 55-25-107(f).

prospective clients was permitted under subsection (b)(4), 133 S. Ct. at 2199, noting that the "in connection with" language in (b)(4) must have a limit and that a "logical and necessary conclusion is that an attorney's solicitation of prospective clients falls outside of that limit." *Id.* at 2200. Thus, our nation's highest court held that the "in connection with" language should not be read to include commercial solicitations by an attorney. *Id.* at 2202.

Similarly, the Court held that "investigation in anticipation of litigation"

> is best understood to allow background research to determine whether there is a supportable theory for a complaint, a theory sufficient to avoid sanctions for filing a frivolous lawsuit, or to locate a witness for deposition or trial testimony. An interpretation of "investigation" to include commercial solicitation of new clients would expand the language in a way inconsistent with the limited uses given as examples in the statutory test.

*Id.* Further rejected was the respondents' argument that while the "mere trolling for clients" should not be permitted under subsection (b)(4), a "solicitation tied to a specific legal dispute" was a permitted use:

> While some solicitations may have a close relationship with existing proceedings, there is no principle way to classify some solicitations as acceptable and other as unacceptable for the purpose of (b)(4). Even if solicitation were permitted only after a lawyer has a client or filed a lawsuit, attorneys would be able to circumvent this limitation with ease by the simple device of filing a placeholder lawsuit. All an attorney would need is one friend or family member as his client before being able to gain access to DPPA-protected personal information to solicit persons to fill in as plaintiffs. Solicitation of new plaintiffs to keep defendants in a lawsuit that would otherwise be dismissed for lack of standing is no different in substance from solicitation to initiate a lawsuit.

*Id.* at 2206. Finally, the Supreme Court rejected the argument that subsection (b)(4) permits attorneys to obtain and use DPPA protected information to aggregate a class-action suit. *Id.* at 2207; *see also Pichler v. Unite*, 446 F.Supp.2d 353, 370 (E.D. Pa. 2006) (holding that defendants were using personal information from motor vehicle records to "find" and not to "investigate" legal claims among putative class members in violation of the DPPA); *Wemhoff v. District of Columbia*, 887 A.2d 1004, 1013 (D.C. 2005) (finding the District of Columbia's Freedom of Information Act does not authorize the disclosure of personal information from the District's motor vehicle records for purpose of solicitation of clients, because the DPPA prohibits such disclosure and use).

- 14 -

The trial court properly determined that TDOSHS correctly redacted the records sought by Attorney.

**E.**

After Attorney had filed his petition for access and the trial court had entered an order setting a show cause hearing, Attorney issued a subpoena to Staff Attorney to produce documents and appear at the show cause hearing set for November 17, 2015. Staff Attorney filed a motion to quash the subpoena, arguing that the discovery rules set forth in the Tennessee Rules of Civil Procedure are not applicable to show cause hearings under Tennessee Code Annotated section 10-7-505 and that the procedure for judicial review provided for in that code section does not authorize a plaintiff to conduct document discovery or subpoena witnesses for the show cause hearing. Upon consideration, the trial court granted the motion to quash. Attorney now argues that the trial court abused its discretion in quashing the subpoena. He contends that as a result, "the documents redacted . . . that were the subject of the show cause hearing were never before the Chancellor because the Chancellor refused to enforce the . . . subpoena."

"In determining whether the trial court abused its discretion, an appellate court 'should presume that the [trial court's] decision is correct and should review the evidence in the light most favorable to the decision." *Mayfield v. Mayfield*, 395 S.W.3d 108, 115 (Tenn. 2012) (quoting *Gonsewski v. Gonsewski*, 350 S.W.3d 99, 105-106 (Tenn. 2011)). Under this standard, as long as the trial court's decision is within the range of acceptable alternatives, it will be upheld on appeal. *Tait v. Tait*, 207 S.W.3d 270, 25 (Tenn. Ct. App. 2006).

In light of the limited nature of a trial court's subject matter jurisdiction under TPRA, the Legislature has provided specific procedures for obtaining access to governmental records when access has been denied. *See* Tenn. Code Ann. § 10-7-505. Specifically, Tennessee Code Annotated section 10-7-505(a) provides:

> Any citizen of Tennessee who shall request the right of personal inspection of any state, county or municipal record as provided in § 10-7-503, and whose request has been in whole or in part denied by the official and/or designee of the official or through any act or regulation of any official or designee of any official, shall be entitled to petition for access to such a record and to obtain judicial review of the actions taken to deny the access.

Tennessee Code Annotated section 10-7-505(b) further instructs that:

> Upon filing of the petition, the court shall, upon request of the petitioning party, issue an order requiring the defendant or

- 15 -

respondent party or parties to immediately appear and show cause, if they have any, why the petition should not be granted. A formal written response to the petition shall not be required, and the generally applicable periods of filing such response shall not apply in the interest of expeditious hearings.

Finally, "[t]he burden of proof for justification of nondisclosure of records sought shall be upon the official and/or designee of the official of those records and the justification for the nondisclosure must be shown by a preponderance of the evidence." Tenn. Code Ann, § 10-7-505(c). The decision of the trial court on the petition constitutes a final judgment on the merits. Tenn. Code Ann. § 10-7-505(b).

By issuing a subpoena requiring the production of documents and the testimony of Staff Attorney, Attorney ignored the statutory procedures for seeking judicial review of the denial of access to public records under TPRA and improperly attempted to expand the limited scope of that proceeding as set forth in Tennessee Code Annotated section 10-7-505. Nowhere in section 10-7-505 is document discovery contemplated, and the plain language of the statute precludes such a procedure.

Tennessee Code Annotated section 10-7-505(b) states that the court can require the defendants to "immediately appear" and provides that "the generally applicable periods of filing such response shall not apply in the interest of expeditious hearings." The Legislature clearly intended for the expeditious resolution of petitions under section 10-7-505 and expressly removed time restraints that normally allow defendants time to evaluate a case and prepare a defense. Thus, it would make no sense to conclude that our General Assembly intended to allow a plaintiff like Attorney to conduct document discovery in preparation for a show cause hearing.

As argued by the defendants, all that Attorney was required to show under the statutory procedure was that he made a request to inspect public records and that such request was denied in whole or in part. Tenn. Code Ann. § 10-7-505(a). Attorney had no need to conduct discovery prior to the show cause hearing. Under Tennessee Code Annotated section 10-7-505(c), it is the defendant who bears the burden of justifying nondisclosure of the records sought; therefore, it is for the defendant to decide, not the plaintiff, how it will meet that burden. Further, contrary to Attorney's position, nothing in section 10-7-505 requires that a governmental body must meet its burden of proof through live testimony; it can instead rely upon affidavits and documentary evidence. *See Lance v. York*, 359 S.W.3d 197, 202 (Tenn. Ct. App. 2011) (finding that district attorney general provided sufficient evidence when he included copy of letter with his answer explaining that plaintiff needed to pay reasonable labor, copying, and mailing costs).

Section 10-7-505(b) specifically provides that the "court may direct that the records being sought be submitted under seal for review by the court and no other party." Pursuant to this provision, Attorney could have requested that the trial court order TDOSHS to produce the

- 16 -

redacted records at issue for an in camera inspection by the court, but he did not. Instead, Attorney chose to issue a subpoena requiring Staff Attorney to produce the redacted records to Attorney, along with a number of other records that were not included within the scope of his request under TPRA.

Upon review of the plain language of Tennessee Code Annotated section 10-7-505 and the record before us, we find that the trial court did not abuse its discretion in finding that it would be unreasonable to require Staff Attorney to produce the requested records and to appear at the show cause hearing.

**F.**

Approximately two weeks after the show cause hearing, Attorney filed a motion for leave to amend his petition "to conform to information proffered to the Court by the parties." The defendants filed a response in which they stated that they had no objection to the amendment of the petition if it was to conform the issues pled in the petition to the evidence presented at the show cause hearing, pursuant to Rule 15.02. But the defendants otherwise objected to the motion, as it sought to assert additional facts and/or evidence that was not presented at the show cause hearing and further sought to incorporate by reference Attorney's Proposed Findings of Fact and Conclusions of Law. The trial court agreed and denied the motion to amend.

Attorney argues that in rendering its judgment, the trial court limited its ruling to the allegations contained in the original complaint, "without regard for the extensive issues addressed by the parties that went far beyond the pleading, including Notice of Seizures." Specifically, Attorney points to the language in the trial court's ruling that refers to forfeiture warrants but does not include the "Notice of Seizures" that were also discussed at the show cause hearing. Attorney contends that by limiting its ruling to the original complaint, the trial court prejudiced him and, thus, abused its discretion in denying Attorney's motion to amend.

Trial courts have broad authority to decide motions to amend pleadings and will not be reversed absent an abuse of discretion. *Hawkins v. Hart*, 86 S.W.3d 522, 532 (Tenn. Ct. App. 2001). Under the abuse of discretion standard, an appellate court cannot substitute its judgment for that of the trial court. *Williams v. Baptist Mem'l Hosp.*, 193 S.W.3d 545, 551 (Tenn. 2006). Numerous factors guide a trial court's discretionary decision whether to allow a late filed amendment, including undue delay, bad faith by the moving party, repeated failure to cure deficiencies by previous amendments, and futility of the amendment. *Pratcher v. Methodist Healthcare Memphis Hosp.*, 407 S.W.3d 727, 741 (Tenn. 2013) (citing *Merriman v. Smith*, 599 S.W.2d 548, 559 (Tenn. Ct. App. 1979)).

Rule 15.02 authorizes amendment of Attorney's complaint only to conform to the issues raised in that complaint to the evidence presented at the show cause hearing—not to present new factual evidence in support of Attorney's claims that was not presented at the show cause

hearing.  *See Randolph v. Meduri*, 416 S.W.3d 378, 384-85 (Tenn. Ct. App. 2011) (citing *Zack Cheek Builders, Inc. v. McLeod*, 597 S.W.2d 88, 890 (Tenn. 1980)).  Given the futility of Attorney's proposed amendments, the trial court did not abuse its discretion in denying Attorney's motion for leave to amend his complaint.

## V. CONCLUSION

The judgment of the trial court is affirmed and remanded.  Costs of this appeal are taxed to the appellant, Herbert Moncier.


_____
JOHN W. MCCLARTY, JUDGE